UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EBIN NEW YORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> KISS NAIL PRODUCTS, INC.; and YONG JIN CHANG aka JOHN CHANG, <br><br> Defendants. | Civil Action No. 2:23-cv-02369 <br><br> **COMPLAINT** <br><br><br> **JURY DEMAND** |

Plaintiff EBIN New York, Inc. ("EBIN" or "Plaintiff"), by and through its attorneys, asserts this Complaint against Defendant KISS Nail Products, Inc. ("KISS") and Yong Jin Chang aka John Chang ("Chang") (collectively, "Defendants"), as set forth below:

## NATURE OF THE ACTION

1.      EBIN is a provider of hair and wig care products that has quickly become a leader in its class. Its products dominate the sales charts for many of the markets that it has entered. EBIN offers its products in a variety of stylized packages across its product lines that consumers now use to associate the products with EBIN.

2.      KISS is a provider of hair and wig care products that is a direct competitor of EBIN. KISS operates in the same product space, marketing channels, and stores as EBIN, and targets the same customers with the same goods. KISS has

realized the overwhelming success of EBIN's products and has just released a new product with new packaging that is confusingly similar to the packaging offered by EBIN for the corresponding product.

3.     EBIN is experiencing significant harm from KISS's new product release, and now brings this action asserting claims for (1) infringement of unregistered trade dress under the Lanham Act (15 U.S.C. § 1125(a)); (2) New Jersey Statutory Trade Dress Infringement N.J.S.A. 56:3-13.16.a; (3) New Jersey common law trade dress infringement; and (4) New Jersey common law unfair competition.

## **THE PARTIES**

4.     Plaintiff EBIN is a corporation existing under the laws of New Jersey, having a principal place of business at 5 Empire Blvd., South Hackensack, New Jersey 07606.

5.     On information and belief, KISS is a corporation existing under the laws of New York, having a principal place of business at 25 Harbor Park Drive, Port Washington, New York 11050.

6.     On information and belief, Chang is an individual and a resident of 7 Dupont Court, Greenvale, NY 11548.

## JURISDICTION AND VENUE

7.      Pursuant to 28 U.S.C. §§ 1331 and 1338, this Court has original subject matter jurisdiction over this action because the action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 et seq.

8.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over EBIN's pendent state law claims because these claims are so related to EBIN's federal claims that they form part of the same case or controversy and derive from the same common nucleus of operative facts.

9.      On information and belief, KISS has registered itself with the New Jersey Secretary of State to do business in the District of New Jersey. Its Entity ID Number is 0450411071.

10.     On information and belief, KISS conducts continuous and systematic business in this forum in such a manner as to invoke the benefits and protections of its laws, and subject itself to general personal jurisdiction in this forum.

11.     This Court has specific personal jurisdiction over KISS because KISS has purposefully directed its actions into the District of New Jersey.

12.     On information and belief, KISS specifically advertises its products to customers of this state, including but not limited to advertising its products by sending sales representatives from KISS to retail stores in this district to solicit purchases from retail stores directly.

13.     On information and belief, KISS specifically sells goods to retailers within this state with the intent that its goods be sold to residents in this state.

14.     On information and belief, Chang is the CEO of KISS and directed its sales and aforementioned acts of trade dress infringement and unfair competition. Chang has materially benefited, and continues to materially benefit, from KISS's acts of trade dress infringement and unfair competition. The Court has specific personal jurisdiction over Chang based on Chang's continuous and systematic business in this state and the purposeful direction of his company's activities into this state.

## FACTUAL BACKGROUND

15.     EBIN manufactures a wide variety of hair care and wig care products, several of which are targeted primarily at the African-American female community.

16.     EBIN's products, while generally of a low cost, often under $10 per unit ($4 for the smaller bottles), are of a superior quality to those of its direct competitors.

17.     EBIN offers its products in a variety of unique and stylized packaging.

18.     One of EBIN's most successful products is its WONDER LACE BOND spray.

19.     The WONDER LACE BOND spray is used to adhere lace front wigs to the scalp of those who wear the wigs to ensure that the wigs do not move during ordinary use.

20.     One popular version of the WONDER LACE BOND spray is sold in stylized packaging consisting of a spray bottle painted in a glossy black paint. The cap of the bottle is clear, and the spray nozzle is black. Images of three different sizes of the WONDER LACE BOND spray are shown below.



**EBIN's WONDER LACE BOND Spray**

21.     This unique combination of a spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle ("EBIN's Trade Dress") is not functional, as it does not impact the cost or quality of EBIN's products, and EBIN's exclusive use of said packaging does not place its competitors at a significant non-reputational disadvantage.

22.     EBIN's Trade Dress, which EBIN was the exclusive user of, particularly in the wig bond spray space, is inherently distinctive, and has come to acquire significant secondary meaning in the minds of consumers who now use this unique trade dress to identify products produced by EBIN.

23.     Products that bear EBIN's Trade Dress have been a resounding commercial success, selling over 2 million units since its launch in September 2021.

24.     Recently, EBIN averages monthly sales of 100,000 units of the WONDER LACE BOND spray in EBIN's Trade Dress.

25.     This significant commercial success demonstrates the significant secondary meaning that EBIN has acquired in EBIN's Trade Dress.

26.     EBIN's Trade Dress is arbitrary as it is used in connection with wig bond sprays and is therefore conceptually strong.

27.     Given the significant sales of products that feature EBIN's Trade Dress, the Trade Dress is commercially strong as well.

28.     EBIN's trade dress is valid and subsisting.

29.     EBIN is not the only company to produce wig bond products.

30.     KISS is also a manufacturer of wig bond products and is one of EBIN's primary competitors in this space.

31.     KISS produces a line of lace wig bond sprays under the STYLE FIXER mark. These lace wig bond sprays were previously sold in spray cans with bright glossy colors and a white spray nozzle. Examples of KISS's traditional product line are as follows:



**KISS's STYLE FIXER Lace Bond Spray**

32.   On information and belief, KISS's STYLE FIXER products are relatively inexpensive, costing less than $10 per bottle on average ($4, for the smaller bottles).

33.   Recently, KISS added a new "Ultimate Hold" lace wig bond spray to its STYLE FIXER line of products. This new Ultimate Hold version of the STYLE FIXER line was produced in a new spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle ("Infringing Packaging"). The Infringing Packaging is illustrated below.

 

**KISS's Infringing Packaging (left) with EBIN's Trade Dress (Right)**

34.     On information and belief, KISS was aware of EBIN's Trade Dress, and the success of products featuring EBIN's Trade Dress before it started designing the Infringing Packaging.

35.     On information and belief, this new packaging which was changed to closely mirror EBIN's Trade Dress was meant to freeride on the goodwill associated with EBIN's Trade Dress, and cause confusion and mistake among the relevant consumers who would purchase KISS's Ultimate Hold product believing it to be the product offered by EBIN.

36.     On information and belief, the way the parties' products are encountered in the marketplace only serves to exacerbate confusion and diminish the value and source identifying capabilities of any house branding on the bottles.

37.     In some instances, KISS's new ULTIMATE HOLD products featuring the Infringing Packaging are mixed together in a bin with exclusively EBIN products:



**KISS's Infringing Packaging Mixed with EBIN's Trade Dress and Other EBIN Products**

38.     On information and belief, some instances of actual confusion among shopkeepers and employees of the shopkeepers have already occurred. A number of these shopkeepers, who are immigrants with English language skills not up to that of a native speaker, have stocked KISS products that feature the Infringing Packaging in the EBIN section of the store next to EBIN products instead of next to the KISS products in the same product line. On information and belief, these shopkeepers and employees are simply looking at the shape and coloration of the

bottle and its cap. The photo in the preceding paragraph demonstrates such an instance, as does the photo below. The photographs were taken in two different stores in two different states.



**KISS Products with Infringing Packaging Stocked Among EBIN Products of the Same Packaging with Additional KISS Not Commingled**

39.     On information and belief, internal testing has demonstrated that the product offered by KISS in the Infringing Packaging is of an inferior quality to that offered by EBIN in connection with EBIN's Trade Dress. KISS's product simply does not hold a lace wig as well and leaves a white residue.

40.    On information and belief, the products offered by KISS in the Infringing Packaging are very inexpensive and cost under $10 per can on average, with smaller bottles costing under $4.

41.    On information and belief, KISS targets the same customers for the products that it sells in connection with the Infringing Packaging as the customers that EBIN targets for products that it sells in connection with EBIN's Trade Dress.

42.    On information and belief, KISS uses the same marketing channels for the products that it sells in connection with the Infringing Packing as the marketing channels that EBIN uses for products that it sells in connection with EBIN's Trade Dress.

43.    On information and belief, the products that KISS sells in connection with the Infringing Packaging are sold in the same retail stores as EBIN's products that feature EBIN's Trade Dress.

44.    On information and belief, the products that KISS sells in connection with the Infringing Packaging are the exact same type of product, lace wig sprays, as EBIN's products that feature EBIN's Trade Dress.

45.    On information and belief, due to the inexpensive price of the products that KISS sells in connection with the Infringing Packaging and EBIN's products that feature EBIN's Trade Dress, customers exercise little care, and conduct a limited investigation, if any, when purchasing the products.

46.   On information and belief, because of the inferior quality of the products that KISS sells in connection with the Infringing Packaging, EBIN's reputation is being tarnished when customers purchase this inferior product believing it to be the product that EBIN offers in connection with EBIN's Trade Dress.

47.   On information and belief, EBIN is suffering economic harm by a loss in sales from customers purchasing the products that KISS sells in the Infringing Packaging while believing them to be the product that EBIN offers in connection with EBIN's Trade Dress.

48.   On information and belief, Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market, and was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging with the intent to freeride on the goodwill of EBIN and EBIN's Trade Dress.

49.   On information and belief, Chang materially benefits from KISS's acts of trade dress infringement.

50.   The above acts were taken by KISS and Chang without the permission of EBIN. Neither KISS nor Chang has authorization from EBIN to use EBIN's Trade Dress, the Infringing Packaging, or any confusingly similar trade dress.

**FIRST CAUSE OF ACTION**
**(Infringement of Unregistered Trade Dress Against KISS**
**[15 U.S.C. § 1125(a)])**

51.    EBIN hereby incorporates by reference each of the allegations in paragraphs 1-50 of this Complaint as if fully set forth herein.

52.    EBIN owns common law trade dress rights to EBIN's Trade Dress based on EBIN's prior continuous and exclusive use of EBIN's Trade Dress in commerce.

53.    EBIN's Trade Dress is arbitrary and is inherently distinctive when used in connection with lace bond wig sprays.

54.    EBIN's Trade Dress is commercially strong.

55.    EBIN's Trade Dress is conceptually strong.

56.    EBIN's Trade Dress is not functional.

57.    EBIN has acquired significant secondary meaning in EBIN's Trade Dress.

58.    On information and belief, KISS was aware of EBIN's Trade Dress before adopting the Infringing Packaging.

59.    On information and belief, the products that KISS offers in connection with the Infringing Packaging are the same class of products that EBIN offers in connection with EBIN's Trade Dress.

60.    On information and belief, the products that KISS offers in connection with the Infringing Packaging are targeted to the same customers as the products that EBIN offers in connection with EBIN's Trade Dress.

61.    On information and belief, the products that KISS offers in connection with the Infringing Packaging are offered in the same marketing channels and retail locations as the products that EBIN offers in connection with EBIN's Trade Dress.

62.    On information and belief, the products that KISS offers in connection with the Infringing Packaging are inferior in quality compared to the products that EBIN offers in connection with EBIN's Trade Dress.

63.    On information and belief, the products that KISS offers in connection with the Infringing Packaging and the products that EBIN offers in connection with EBIN's Trade Dress are inexpensive, costing less than $10 on average, and customers do not exercise a great deal of care when purchasing the products.

64.    On information and belief, actual confusion already exists based on KISS's sales of products bearing the Infringing Packaging. Customers and vendors of these products mistakenly believe that these products originate from or are related to EBIN.

65.    On information and belief, KISS's sale of products in connection with the Infringing Packaging is likely to cause confusion as to the source, origin,

sponsorship of KISS and the products that it sells on the one hand and EBIN and the products that it sells in connection with EBIN's Trade Dress on the other.

66.     The above identified actions constitute infringement of unregistered trade dress in violation of the Lanham Act.

67.     On information and belief, KISS's acts of trade dress infringement are willful.

68.     As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

69.     EBIN is entitled to injunctive relief and other remedies available under the Lanham Act, including but not limited to Defendant's profits, any damages sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## SECOND CAUSE OF ACTION
### (Induced Infringement of Unregistered Trade Dress Against Chang
### [15 U.S.C. § 1125(a)])

70.     EBIN hereby incorporates by reference each of the allegations in paragraphs 1-69 of this Complaint as if fully set forth herein.

71.     On information and belief, Chang is the CEO of KISS and directed its sales and aforementioned acts of trade dress infringement.

72.     On information and belief, Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market prior to KISS's

adoption of the Infringing Packaging, and was the individual who directed KISS to adopt the Infringing Packaging.

73.    On information and belief, Chang was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging in order to freeride on the goodwill of EBIN and EBIN's Trade Dress.

74.    On information and belief, Chang materially benefits from KISS's acts of trade dress infringement.

75.    On information and belief, Chang directed KISS to advertise and sell products featuring the Infringing Packaging in New Jersey, including by sending employees of KISS into New Jersey to advertise and sell products featuring the Infringing Packaging directly to store owners.

76.    On information and belief, the aforementioned acts were willful.

77.    On information and belief, the aforementioned acts constitute induced trade dress infringement of the Lanham Act.

78.    As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

79.    EBIN is entitled to injunctive relief and other remedies available under the Lanham Act, including but not limited to Defendant's profits, any damages

sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## THIRD CAUSE OF ACTION
### (NJ Statutory Trademark Infringement Against KISS)
### [N.J.S.A. 56:3-13.16.a]

80.     EBIN hereby incorporates by reference each of the allegations in paragraphs 1-79 of this Complaint as if fully set forth herein.

81.     EBIN owns common law trade dress rights to EBIN's Trade Dress based on EBIN's prior continuous and exclusive use of EBIN's Trade Dress in commerce.

82.     EBIN's Trade Dress is arbitrary and inherently distinctive when used in connection with lace bond wig sprays.

83.     EBIN's Trade Dress is commercially strong.

84.     EBIN's Trade Dress is conceptually strong.

85.     EBIN's Trade Dress is not functional.

86.     EBIN has acquired significant secondary meaning in EBIN's Trade Dress.

87.     On information and belief, KISS was aware of EBIN's Trade Dress before adopting the Infringing Packaging.

88.     On information and belief, the products that KISS offers in connection with the Infringing Packaging are the same class of products that EBIN offers in connection with EBIN's Trade Dress.

89.     On information and belief, the products that KISS offers in connection with the Infringing Packaging are targeted to the same customers as the products that EBIN offers in connection with EBIN's Trade Dress.

90.     On information and belief, the products that KISS offers in connection with the Infringing Packaging are offered in the same marketing channels and retail locations as the products that EBIN offers in connection with EBIN's Trade Dress.

91.     On information and belief, the products that KISS offers in connection with the Infringing Packaging are inferior in quality to the products that EBIN offers in connection with EBIN's Trade Dress.

92.     On information and belief, the products that KISS offers in connection with the Infringing Packaging and the products that EBIN offers in connection with EBIN's Trade Dress are inexpensive, costing less than $10 on average, and customers do not exercise a great deal of care when purchasing the products.

93.     On information and belief, actual confusion already exists based on KISS's sales of products bearing the Infringing Packaging. Customers and vendors of these products mistakenly believe that these products originate from or are related to EBIN.

94.     On information and belief, KISS's sale of products in connection with the Infringing Packaging is likely to cause confusion as to the source, origin,

sponsorship of KISS and the products that it sells on the one hand and EBIN and the products that it sells in connection with EBIN's Trade Dress on the other.

95.     The above identified actions constitute infringement of unregistered trade dress in violation of N.J.S.A. 56:3-13.16.a.

96.     On information and belief, KISS's acts of trade dress infringement are willful.

97.     As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

98.     EBIN is entitled to injunctive relief and other remedies available under N.J.S.A. 56:3-13.16.a, including but not limited to Defendant's profits, any damages sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

**FOURTH CAUSE OF ACTION**
**(Induced NJ Statutory Trademark Infringement Against Chang)**
**[N.J.S.A. 56:3-13.16.a]**

99.     EBIN hereby incorporates by reference each of the allegations in paragraphs 1-98 of this Complaint as if fully set forth herein.

100.    On information and belief, Chang is the CEO of KISS and directed its sales and aforementioned acts of trade dress infringement.

101.    On information and belief, Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market prior to KISS's

adoption of the Infringing Packaging, and was the individual who directed KISS to adopt the Infringing Packaging.

102.   On information and belief, Chang was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging in order to freeride on the goodwill of EBIN and EBIN's Trade Dress.

103.   On information and belief, Chang materially benefits from KISS's acts of trade dress infringement.

104.   On information and belief, Chang directed KISS to advertise and sell products featuring the Infringing Packaging in New Jersey, including by sending employees of KISS into New Jersey to advertise and sell products featuring the Infringing Packaging directly to store owners.

105.   On information and belief, the aforementioned acts were willful.

106.   On information and belief, the aforementioned acts constitute induced trade dress infringement under N.J.S.A. 56:3-13.16.a.

107.   As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

108.   EBIN is entitled to injunctive relief and other remedies available under N.J.S.A. 56:3-13.16.a, including but not limited to Defendant's profits, any damages

sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## FIFTH CAUSE OF ACTION
### (NJ Common Law Trademark Infringement Against KISS)

109.  EBIN hereby incorporates by reference each of the allegations in paragraphs 1-108 of this Complaint as if fully set forth herein.

110.  EBIN owns common law trade dress rights to EBIN's Trade Dress based on EBIN's prior continuous and exclusive use of EBIN's Trade Dress in commerce.

111.  EBIN's Trade Dress is arbitrary and inherently distinctive when used in connection with lace bond wig sprays.

112.  EBIN's Trade Dress is commercially strong.

113.  EBIN's Trade Dress is conceptually strong.

114.  EBIN's Trade Dress is not functional.

115.  EBIN has acquired significant secondary meaning in EBIN's Trade Dress.

116.  On information and belief, KISS was aware of EBIN's Trade Dress before adopting the Infringing Packaging.

117.  On information and belief, the products that KISS offers in connection with the Infringing Packaging are the same class of products that EBIN offers in connection with EBIN's Trade Dress.

118.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are targeted to the same customers as the products that EBIN offers in connection with EBIN's Trade Dress.

119.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are offered in the same marketing channels and retail locations as the products that EBIN offers in connection with EBIN's Trade Dress.

120.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are inferior in quality to the products that EBIN offers in connection with EBIN's Trade Dress.

121.   On information and belief, the products that KISS offers in connection with the Infringing Packaging and the products that EBIN offers in connection with EBIN's Trade Dress are inexpensive, costing less than $10 on average, and customers do not exercise a great deal of care when purchasing the products.

122.   On information and belief, actual confusion already exists based on KISS's sales of products bearing the Infringing Packaging. Customers and vendors of these products mistakenly believe that these products originate from, or are related to, EBIN.

123.   On information and belief, KISS's sale of products in connection with the Infringing Packaging is likely to cause confusion as to the source, origin,

sponsorship of KISS and the products that it sells on the one hand and EBIN and the products that it sells in connection with EBIN's Trade Dress on the other.

124. The above identified actions constitute infringement of unregistered trade dress in violation of the New Jersey common law.

125. On information and belief, KISS's acts of trade dress infringement are willful.

126. As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

127. EBIN is entitled to injunctive relief and other remedies available at common law, including but not limited to Defendant's profits, any damages sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## SIXTH CAUSE OF ACTION
### (Induced NJ Common Law Trademark Infringement Against Chang)

128. EBIN hereby incorporates by reference each of the allegations in paragraphs 1-127 of this Complaint as if fully set forth herein.

129. On information and belief, Chang is the CEO of KISS and directed its sales and aforementioned acts of trade dress infringement.

130. On information and belief, Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market prior to KISS's

adoption of the Infringing Packaging, and was the individual who directed KISS to adopt the Infringing Packaging.

131.   On information and belief, Chang was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging in order to freeride on the goodwill of EBIN and EBIN's Trade Dress.

132.   On information and belief, Chang materially benefits from KISS's acts of trade dress infringement.

133.   On information and belief, Chang directed KISS to advertise and sell products featuring the Infringing Packaging in New Jersey, including by sending employees of KISS into New Jersey to advertise and sell products featuring the Infringing Packaging directly to store owners.

134.   On information and belief, the aforementioned acts were willful.

135.   On information and belief, the aforementioned acts constitute induced trade dress infringement in violation of the New Jersey common law.

136.   As a direct and proximate result of Defendant's trade dress infringement, EBIN has suffered and will continue to suffer irreparable harm and damages.

137.   EBIN is entitled to injunctive relief and other remedies available at common law, including but not limited to Defendant's profits, any damages

sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## SEVENTH CAUSE OF ACTION
### (NJ Common Law Unfair Competition Against KISS)

138.   EBIN hereby incorporates by reference each of the allegations in paragraphs 1-137 of this Complaint as if fully set forth herein.

139.   EBIN owns common law trade dress rights to EBIN's Trade Dress based on EBIN's prior continuous and exclusive use of EBIN's Trade Dress in commerce.

140.   EBIN's Trade Dress is arbitrary and inherently distinctive when used in connection with lace bond wig sprays.

141.   EBIN's Trade Dress is commercially strong.

142.   EBIN's Trade Dress is conceptually strong.

143.   EBIN's Trade Dress is not functional.

144.   EBIN has acquired significant secondary meaning in EBIN's Trade Dress.

145.   On information and belief, KISS was aware of EBIN's Trade Dress before adopting the Infringing Packaging.

146.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are the same class of products that EBIN offers in connection with EBIN's Trade Dress.

147.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are targeted to the same customers as the products that EBIN offers in connection with EBIN's Trade Dress.

148.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are offered in the same marketing channels and retail locations as the products that EBIN offers in connection with EBIN's Trade Dress.

149.   On information and belief, the products that KISS offers in connection with the Infringing Packaging are inferior in quality to the products that EBIN offers in connection with EBIN's Trade Dress.

150.   On information and belief, the products that KISS offers in connection with the Infringing Packaging and the products that EBIN offers in connection with EBIN's Trade Dress are inexpensive, costing less than $10 on average, and customers do not exercise a great deal of care when purchasing the products.

151.   On information and belief, actual confusion already exists based on KISS's sales of products bearing the Infringing Packaging. Customers and vendors of these products mistakenly believe that these products originate from or are related to EBIN.

152.   On information and belief, KISS's sale of products in connection with the Infringing Packaging is likely to cause confusion as to the source, origin,

sponsorship of KISS and the products that it sells on the one hand and EBIN and the products that it sells in connection with EBIN's Trade Dress on the other.

153.   The above identified actions constitute unfair competition in violation of the New Jersey common law.

154.   On information and belief, KISS's acts of unfair competition are willful.

155.   As a direct and proximate result of Defendant's unfair competition, EBIN has suffered and will continue to suffer irreparable harm and damages.

156.   EBIN is entitled to injunctive relief and other remedies available at common law, including but not limited to Defendant's profits, any damages sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## EIGHTH CAUSE OF ACTION
### (NJ Common Law Unfair Competition Against Chang)

157.   EBIN hereby incorporates by reference each of the allegations in paragraphs 1-156 of this Complaint as if fully set forth herein.

158.   On information and belief, Chang is the CEO of KISS and directed its sales and aforementioned acts of unfair competition.

159.   On information and belief, Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market prior to KISS's

adoption of the Infringing Packaging, and was the individual who directed KISS to adopt the Infringing Packaging.

160.   On information and belief, Chang was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging in order to freeride on the goodwill of EBIN and EBIN's Trade Dress.

161.   On information and belief, Chang materially benefits from KISS's acts of unfair competition.

162.   On information and belief, Chang directed KISS to advertise and sell products featuring the Infringing Packaging in New Jersey, including by sending employees of KISS into New Jersey to advertise and sell products featuring the Infringing Packaging directly to store owners.

163.   On information and belief, the aforementioned acts were willful.

164.   On information and belief, the aforementioned acts constitute induced unfair competition in violation of the New Jersey common law.

165.   As a direct and proximate result of Defendant's unfair competition, EBIN has suffered and will continue to suffer irreparable harm and damages.

166.   EBIN is entitled to injunctive relief and other remedies available at common law, including but not limited to Defendant's profits, any damages sustained by EBIN, the trebling of any damages according to the circumstances of this case, attorneys' fees, costs, and prejudgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, EBIN prays for:

A.     A preliminary and permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with Defendants, from engaging in any further trade dress infringement and unfair competition.

B.     Judgment in favor of EBIN for all of EBIN's enumerated causes of action.

C.     An award of Defendants' profits, or EBIN's actual damages, whichever are greater.

D.     A finding that Defendants' actions were willful.

E.     A finding that this is an extraordinary case.

F.     Trebling of damages.

G.     An award of EBIN's attorney's fees and costs in this matter.

H.     Such other and further relief as the Court deems proper.

## **<u>JURY DEMAND</u>**

Plaintiff EBIN New York, Inc. requests a trial by jury on all issues so triable.


Dated:  April 28, 2023               Respectfully submitted,

By   s/John K. Kim
     John K. Kim (NJ Bar No. 059451994)
     LEWIS ROCA ROTHGERBER
     CHRISTIE LLP
     201 East Washington Street, Suite 1200
     Phoenix, AZ 85255
     Tel:  (602) 262-5311
     Fax: (602) 262-5747
     Email: jkim@lewisroca.com

     *Attorneys for Plaintiff*
     *EBIN New York, Inc.*