UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EBIN NEW YORK, INC., <br><br>          Plaintiff, <br><br>          v. <br><br> KISS NAIL PRODUCTS, INC.; <br> and YONG JIN CHANG aka <br> JOHN CHANG, <br><br>          Defendants. | Civil Action No. 2:23-cv-02369-ES-JRA |

**PLAINTIFF EBIN NEW YORK, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................... 1

II.   FACTUAL BACKGROUND .................................................... 2

III.  LEGAL STANDARD................................................................ 3

IV.   ARGUMENT............................................................................ 5

      A.    EBIN Stated a Claim Against Chang for Induced Infringement ........ 5

      B.    EBIN Adequately Identified its Trade Dress .................................... 8

      C.    EBIN Properly Plead That its Trade Dress is
            Inherently Distinctive........................................................ 10

      D.    EBIN Properly Plead That its Trade Dress
            Has Secondary Meaning .................................................... 14

            1.    EBIN Properly Plead Significant Sales Gave Rise
                  to Secondary Meaning ........................................... 15

            2.    EBIN Properly Plead That the Duration of Use
                  Supports Secondary Meaning.................................. 18

            3.    EBIN Properly Plead That the Instances of Actual
                  Confusion of Use Supports Secondary Meaning .................. 19

            4.    EBIN Properly Plead That Defendant's
                  Copying Supports Secondary Meaning ............................... 22

      E.    The Complaint Plausibly States a Claim for Likelihood
            of Confusion .................................................................... 22

            1.    EBIN Adequately Plead That The Infringing
                  Trade Dress Is Confusingly Similar ...................... 25

            2.    EBIN Adequately Plead That its Marks are Strong ............. 27

            3.    EBIN Adequately Plead Overlap in Markets,
                  Target Customers, Overlapping Products............................ 27

            4.    EBIN Sufficiently Plead Actual Confusion ........................... 29

            5.    EBIN Sufficiently Plead Lack of Consumer Care ................ 31

            6.    EBIN Sufficiently Plead Intent ............................................ 32

            7.    EBIN Provided Information Regarding the Length of Time
                  the Parties' Products Co-Existed Without Confusion and the
                  Relationship of the Products in the Minds of Consumers ...... 33

F.      EBIN is Not Alleging Infringement of a Line of Products .............. 34

V.      EBIN'S NEW JERSEY CLAIMS ALSO STATE A CLAIM ................... 35

VI.     CONCLUSION ......................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
 237 F.3d 198 (3d Cir. 2000)........................................................23, 24

*Adam v. Barone*,
 Civil Action No. 20-10321 (MAS) (JBD),
 2023 WL 3058724 (D.N.J. April 24, 2023)........................................7

*AFL Phila. LLC v. Krause*,
 639 F.Supp.2d 512 (E.D. Pa. 2009)...................................................17

*Am. Beverage Corp. v. Diageo N. Am., Inc.*,
 936 F.Supp.2d 555 (W.D. Pa. 2013) .................................................22

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)........................................................................3, 4

*Batinkoff v. Church & Dwight Co.*,
 No. 3:18-cv-16388-BRM-LHG,
 2020 WL 1527957 (D.N.J. Mar. 31, 2020).........................................5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).......................................................................3, 4

*Best Cellars, Inc. v. Wine Made Simple, Inc.*,
 320 F.Supp.2d 60 (S.D.N.Y. 2003) ..................................................15

*Buck v. Hampton Twp. Sch. Dist.*,
 452 F.3d 256 (3d Cir. 2006)...............................................................4

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
 11 F.Supp.3d 317 (E.D.N.Y. 2014)...................................................16

*Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*,
 126 F.Supp.2d 937 (E.D. Pa. 2001)...................................................28

*Conopco, Inc. v. WBM, LLC*,
 Civil Action No. 21-14205 (ZNQ)(RLS), 2023 WL 2570207
 (D.N.J. Mar. 20, 2023).......................................................................9

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
  930 F.2d 1056 (3d Cir. 1991)..............................................................24

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)................................................................3

*Diamond State Door, LLC, v. Diamond State Pole Bldgs.*,
  LLC, Civil Action No. 21-cv-1258-RGA,
  2023 WL 3625000 (D. Del. March 24, 2023)...................................18

*Donsco, Inc. v. Casper Corp.*,
  587 F.2d 602 (3d Cir. 1978)................................................................5

*Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*,
  40 F.3d 1431 (3d Cir. 1994)...............................................11, 12, 17

*Eagle Snacks, Inc. v. Nabisco Brands, Inc.*,
  625 F. Supp. 571 (D.N.J. 1985) .......................................................26

*Eliya, Inc. v. Steven Madden, Ltd.*,
  No. 15-CV-1272 (DRH)(SIL),
  2018 WL 1796228 (E.D.N.Y. Jan. 11, 2018) ..................................30

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 309 (3d Cir. 2014)...............................................................9

*First Am. Mktg. Corp. v. Canella*,
  No. CIV.A. 03-CV-812, 2004 WL 250537 (E.D. Pa. Jan. 26, 2004)...............17

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
  30 F.3d 466 (3d Cir. 1994)................................................................25

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
  432 F.3d 463 (3d Cir. 2005)......................................................23, 26

*Good 'N Nat. v. Nature's Bounty, Inc.*,
  No. 87-662, 1990 WL 127126 (D.N.J. Aug. 30, 1990)....................18

*Hampden Eng'g Corp. v. Shear Tech., LLC*,
  Civil Action No. 15-7424,
  2016 WL 8677215 (D.N.J. Aug. 26, 2016) ......................................13

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*,
    500 F.Supp.3d 380 (E.D. Pa. 2020) ............................................................ 14, 16

*Interlink Prod. Int'l, Inc. v. F&W Trading LLC*,
    No. 15-1340, 2016 WL 1260713 (D.N.J. Mar. 31, 2016) ................................ 24

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983) ....................................................... 23, 24, 27, 28

*Javo Beverage Co., Inc. v Javy Coffee Co.*,
    C. A. 22-547-RGA, 2023 WL 387587 (D. Del. Jan. 25, 2023) ........................ 30

*Johnson v. Park Ave. Rest. Corp.*,
    Civ. No. 17-7452, 2018 WL 1535267 (D.N.J. Mar. 28, 2018) ........................ 29

*Juul Labs, Inc. v. 4X PODS.*,
    439 F.Supp.3d 341 (D.N.J. 2020) .................................................................. 31

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ......................................................................... 25

*Liberty & Prosperity 1776, Inc. v. Corzine*,
    720 F.Supp.2d 622 (D.N.J. 2010) ................................................................. 28

*Lorillard Techs., Inc. v. NJ Ale House, LLC*,
    No. 14-2044, 2015 WL 1197531 (D.N.J. Mar. 13, 2015) ........................... 15, 24

*Malleus v. George*,
    641 F.3d 560 (3d Cir. 2011) ........................................................................... 4

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010) ........................................................................... 4

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ................................................................ 7, 29

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*,
    511 F.3d 350 (3d Cir. 2007) ......................................................................... 20

*Milwaukee Elec. Tool Corp. v. Snow Joe, LLC*,
    Civil Action No. 21-16140 (MAS) (DEA),
    2022 WL 1192793 (D.N.J. April 21, 2022) .......................................... 23, 24, 25

*Opticians Ass'n v. Indep. Opticians*,
  920 F.2d 187 (3d Cir. 1990) .............................................................24

*Peter Luger Inc. v. Silver Star Meats Inc.*,
  No. CIV.A.01-1557, 2002 WL 1870066 (W.D. Pa. May 17, 2002) ..................31

*Phillips v. County of Allegheny*,
  515 F. 3d 224 (3d Cir. 2008) .............................................................4

*Qwest Commc'ns Int'l v. Cyber-Quest, Inc.*,
  124 F.Supp.2d 297 (M.D. Pa. 2000) ...................................................25

*Reed Publ'g (Nederland) B.V. v. Execulink, Inc.*,
  No. CIV.A. 98-1049 AMW,
  2000 WL 1023356 (D.N.J. June 8, 2000) ...........................................30

*Rose v. Bartle*,
  871 F.2d 331 (3d Cir. 1989) .............................................................33

*Sexy Hair Concepts, LLC v. Conair Corp.*,
  Case No. 2:12-cv-02218-CBM,
  2012 WL 12882365 (C.D. Cal. Nov. 15, 2012) .............................1, 32

*Spark Innovators Corp. v. Tele Marketers, Inc.*,
  Civil Action No. 14-1771 (FSH),
  2014 WL 2773661 (D.N.J. June 19, 2014) ..............................5, 6, 7

*Swift Harvest USA, LLC v. Boley Int'l HK Ltd*,
  No. 19-cv-1700 (DMG),
  2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) .................................14

*Tristar Prods., Inc. v. E. Mishan & Sons, Inc.*,
  No. CV 17-1204 (RMB/JS),
  2017 WL 1404315 (D.N.J. Apr. 19, 2017) .........................................9

*Wal-Mart Stores, Inc. v. Samara Bros.*,
  529 U.S. 205 (2000) ..........................................................12, 13, 18

*What A Smoke, LLC v. Duracell U.S. Operations, Inc.*,
  Civil Action No. 19-16657 (JMV)(JAD),
  2020 WL 6375653 (D.N.J. Oct. 30, 2020) ........................................34

**Other Authorities**

Fed.R.Civ.P. 8(a)(2)................................................................................28

Fed.R.Civ.P. 12(b)(6)................................................................................3

## I.    <u>INTRODUCTION</u>

Kiss's motion, while thick on case citation and selective quotation, is thin on the actual analysis of the cases to the present dispute. This might be because many of the cases that Kiss cites to actually hold in favor of EBIN on a motion to dismiss, and had Kiss analyzed the cases substantively, or provided the entire quote, its motion would fall apart. The use of cases that misrepresents their substance should not be tolerated by the Court and does not support Kiss's motion to dismiss.[1] In many instances Kiss's selective citations are not useful because they are rulings at the summary judgment stage where the parties have had the benefit of discovery and the standard is significantly different than the present motion to dismiss for failure to state a claim. Kiss's motion reads much like a motion for summary judgment and demands that EBIN identify evidence and facts that will be developed during

---

[1] For example, Kiss cites *Sexy Hair Concepts, LLC v. Conair Corp.*, Case No. 2:12-cv-02218-CBM (PLAx), 2012 WL 12882365, at *7 (C.D. Cal. Nov. 15, 2012) for the idea that the low cost of the parties' products should not weigh in favor of infringement in this case by parenthetically citing the court's holding with the highly misleading excerpt/parenthetical: "(finding that this factor did not weigh in favor of a likelihood of confusion because "consumers are probably particular about exactly what products work well in their hair.")." This is grossly misleading as the full citation illustrates. In reality, the court found the consumer care factor neutral because "[h]ere, the products at issue are indeed relatively inexpensive, **but are typically sold in salons where consumers are probably particular about exactly what products work well in their hair**." (emphasis added). The fact that the products were sold in salons where people are particular about their hair was completely omitted from Kiss's citation and completely changes the meaning of the court's holding. Here the parties' products are not sold in expensive salons, but in discount beauty supply stores.

discovery and simply are not required at this juncture.

Despite the deluge of mostly out-of-circuit case citations, EBIN's complaint presents enough information to survive a motion to dismiss at the pleading stage, particularly when the Court assumes that EBIN's well plead allegations are true. For the reasons stated below, Kiss's motion should be denied.

## II.   **FACTUAL BACKGROUND**

This is a simple case of copying. As is explained in the Complaint, before EBIN released extreme firm hold product bearing EBIN's Trade Dress Kiss offered its lace bond spray products in bright colored packaging with white nozzles. (Complaint at 31)



**Kiss's Original Packaging**



**EBIN's Trade Dress**



**Kiss's Revised Packaging**

Shortly after EBIN released its extreme firm hold product in EBIN's Trade Dress which was a resounding commercial success, it added a new product to its STYLE FIXER Lace Bond Spray product line that changed its packaging convention[2]. (Complaint at ¶ 33) This new product in a revised packaging did away with the bright colors that were the hallmarks of its STYLE FIXER product line and exchanged them for the same glossy black found in EBIN's product. (*Id.*) Kiss did away with the large white spray nozzle and replaced it with a smaller black nozzle that not only had the same shape as EBIN's but even had the same green outlet on the front. (*Id.*)  Kiss also added a clear cap that covered the spray nozzle. (*Id.*)  As EBIN explains in its Complaint, this was done with knowledge of EBIN's Trade Dress, and done to freeride on the goodwill associated with it. (Complaint at ¶¶ 34-35)

## III.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the burden is on the moving party to show

---

[2] Kiss continued to sell its older STYLE FIXER Lace Bond Spray products in the original packaging.

that the plaintiff has not stated a facially plausible claim. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). Moreover, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alteration in original; internal citation omitted). But a court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

> "[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 550 U.S.. at 555-556, n.3.] This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*

> *Phillips v. County of Allegheny*, 515 F. 3d 224, 234 (3d Cir. 2008).

"[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."

(internal citations and quotations omitted) (alteration in original).

IV.   **ARGUMENT**

A.   **EBIN Stated a Claim Against Chang for Induced Infringement**

Kiss spends much time arguing that EBIN needs to pierce the corporate veil in order to find liability for its principal Mr. Chang. (Motion at 5-7) But the case law is clear that for induced trademark/trade dress infringement, which is what EBIN expressly plead in this instance, EBIN is not required to pierce the corporate veil. *Batinkoff v. Church & Dwight Co.*, No. 3:18-cv-16388-BRM-LHG, 2020 WL 1527957, at *15 (D.N.J. Mar. 31, 2020) ("Corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *'regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil.'"). (emphasis in original). *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort. . . . We hold that Casper Pinsker is liable as a participant in a wrongful act. This liability is distinct from the liability resulting from the 'piercing of the corporate veil' as that term is commonly used.").

Kiss knows this. After the section of *Spark Innovators* that Kiss relies on the court states: "Notwithstanding, corporate officers can alternatively be held liable for

unfair competition if they participate in the alleged unfair competition. A corporate officer participates in unfair competition when he authorizes and approves of such unfair competition. To defeat a motion to dismiss, plaintiff must present a sufficient factual basis showing the accused corporate officer is individually liable for unfair competition; however, plaintiff is not required to plead evidence." *Spark Innovators Corp. v. Tele Marketers, Inc.*, Civil Action No. 14-1771 (FSH), 2014 WL 2773661, at *7 (D.N.J. June 19, 2014). (internal citations omitted).  Here, EBIN alleged that Chang "directed its sales and aforementioned acts of trade dress infringement and unfair competition. Chang has materially benefited, and continues to materially benefit, from KISS's acts of trade dress infringement and unfair competition." (Complaint ¶ 14) It continues, noting that "Chang was aware of EBIN's Trade Dress and dominance in this portion of the wig and hair care market, and was the individual who directed KISS to manufacture its new ULTRA HOLD line of products in the Infringing Packaging with the intent to freeride on the goodwill of EBIN and EBIN's Trade Dress." (*Id.* at ¶ 48) He, "materially benefits from KISS's acts of trade dress infringement." (*Id.* at ¶ 49) Similar allegations were repeated at paragraphs 71-74, 100-104, 129-133, and 158-162.  This was the exact type of pleading that the court in *Spark Innovators*, Kiss's own case, relied on to deny the motion to dismiss for failure to state a claim: "Comparatively, in regard to Mr. Advani's liability, Spark has alleged Mr. Advani directs, controls, advertises, markets, and sells Tele

Marketers's products." *Spark Innovators Corp.*, 2014 WL 2773661, at *7. The fact that these allegations were plead on "information and belief" is inconsequential. As *Spark* makes clear, EBIN is not required to plead evidence at this time. (*Id.*) It is certainly plausible that the CEO of a company knows of its largest competitors. It is certainly plausible that the CEO of a company knows of its competitor's products. It is certainly plausible that a CEO of a company directs and approves packaging design. That is how the hair care industry works. Everyone keeps a close eye on their competitors at trade shows and in magazines, and the CEOs of companies maintain a tight-fisted control over their companies' operations.

The above is a far more detailed pleading than the cases that Kiss relies on. For example, in *Adam v. Barone*, Civil Action No. 20-10321 (MAS) (JBD), 2023 WL 3058724, at *3-4 (D.N.J. April 24, 2023), the Court noted that "Plaintiff's allegations that Barone and Chumenko admitted they are principals of the relevant companies and that their home addresses appear on the companies' websites do not sufficiently demonstrate tortious conduct." Kiss's argument that the Federal Rules of Civil Procedure does not permit facts to be plead upon information to serve as the sole basis of relief is plainly incorrect. *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016).

> Clondalkin's second argument—insinuating that the Federal Rules of Civil Procedure do not permit facts pleaded upon information and belief to serve as the sole basis for relief—is plainly incorrect. This Court has explained that pleading upon information and belief is permissible

"[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "boilerplate and conclusory allegations" and "[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible."

Kiss equates "on information and belief" as being conclusory, and that simply is not the law. There are enough factual allegations, such as evidence of Kiss changing its trade dress to mirror EBIN's, the fact that Chang is the CEO of Kiss, that EBIN is a huge player in this space, to make the allegations that Chang directed and controlled Kiss's infringement with knowledge of EBIN and its products plausible. What actually happened is within Kiss's knowledge or control and EBIN should be allowed to find out via discovery.

### B.   EBIN Adequately Identified its Trade Dress

Kiss easily identifies what EBIN claims is its trade dress, namely, "[a] unique combination of a spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle." (Motion at 9) Kiss then professes to have no idea what this means. EBIN both described its trade dress in clear words, listing all of the elements, as well as showed representative pictures of the trade dress as is found in paragraph 20 of the Complaint. Even if EBIN's articulation of its trade dress was more detailed to include things like the rounded shape of the shoulders of the bottle, etc., it would not matter or change the fact that Kiss infringed EBIN's trade dress. The simple fact is, Kiss copied every element of EBIN's trade dress. It did not pick any generic spray

nozzle, it picked the exact same one with the exact same green spray opening. It did not pick <u>any</u> bottle; it picked the same bottle with the same contours and same glossy black paint. This is clear in the photos of the two products shown above on page 2.

EBIN's list of its trade dress elements, the glossy black bottle, clear cap, and black spray nozzle, is a far more detailed and enumerated list than the description of the trade dress that KISS relies on in *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 309 (3d Cir. 2014). In *Fair Wind*, the plaintiff identified its trade dress as "the combination of its choice to solely employ catamaran vessels" and its "unique teaching curriculum, student testimonials, and registered domain name" *Id*. at 309-310. The court noted that "By its own terms, then, Fair Wind's 'trade dress' is simply a hodgepodge of unconnected pieces of its business, which together do not comprise any sort of composite <u>visual effect</u>." (Emphasis added) *Id*. at 310.[3]

---

[3] Kiss's other cited cases similarly lack the level of detail of EBIN's pleading. *Conopco, Inc. v. WBM, LLC*, Civil Action No. 21-14205 (ZNQ)(RLS), 2023 WL 2570207, at *4 (D.N.J. Mar. 20, 2023) ("Defendant vaguely refers to 'translucent packaging' (Am. Answer at 18–19) and only broadly argues in its Opposition that '[it]'s [*sic*] counterclaims for trade dress are in relation to the same handsoap packages that Plaintiff discusses in its Complaint [therefore] Plaintiff is keenly aware of the elements of the trade dress which make up the overall look of [Defendant]'s handsoap packaging as it pled so in detail in the Complaint.'" ). *Tristar Prods., Inc. v. E. Mishan & Sons, Inc.*, No. CV 17-1204 (RMB/JS), 2017 WL 1404315, at *7 (D.N.J. Apr. 19, 2017) ("Plaintiff does not, however, articulate any of these specific elements as comprising Tristar's distinct trade dress in its Complaint. Instead, the Complaint merely includes images of the Copper Chef pan and baldly states that '[a]ll the features that make up the COPPER CHEF trade dress are nonfunctional....' Comp. ¶ 11 [Docket No. 1]. Moreover, the Complaint did not identify Copper Chef's retail packaging as comprising part of Plaintiff's protected

Kiss's trade dress is all about the visual effect. The glossy black bottle, the clear cap, the black nozzle. All of these are visual elements. Had Kiss stuck with the same visual look in its earlier products, the parties would not be here.

Kiss also appears to be confused by the idea that EBIN has trade dress rights in multiple trade dresses. In footnote 4 on page 10 of the brief, Kiss cites to EBIN's complaint against GOIPLE which is also pending in the District of New Jersey.  The trade dress at issue in that case, which also consists of highly stylized bottles, is for a completely different product line than the products at issue in this case. Apparently, Kiss is unaware that companies may have multiple product lines and can have trade dress rights in multiple products. In that case, just like here, a competitor took EBIN's exact packaging down to the bottle and cap (including color!) that was used and made a competing product. Freeriding on the hard work of others seems to be standard operating procedure for companies in this space.

### C.   <u>EBIN Properly Plead That its Trade Dress is Inherently Distinctive</u>

Kiss starts its arguments concerning inherent distinctiveness by assuming, without any analysis, that this is a product configuration case, rather than a product packaging case. (Motion at 14-15) It does so because inherent distinctiveness is analyzed under a much higher standard for a product configuration case, compared

---

trade dress.").

to a product packaging case.[4] (Motion 14-20) But this is not a product configuration case. This is a product packaging case.

Citing to *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452 (3d Cir. 1994), Kiss relies on a three-factor test for determining if the elements claimed by EBIN can be inherently distinctive. (Motion at 15) But as is plainly evident from products at issue in *Duraco*, the spray bottles at issue here are product *packaging*, not product *configuration*, and *Duraco* is inapplicable. *Duraco Prod.*, 40 F.3d at 1433–34 (3d Cir. 1994) ("Duraco, a manufacturer of plastic planters for use in gardens, claims that Joy has infringed the trade dress of Duraco's most popular product by marketing a planter with a similar shape and texture, and that Travis is liable for manufacturing the molds for Joy's planter. Because Duraco's claim is

---

[4] This is explained by the case that Kiss cites in support of its argument, *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1448 (3d Cir. 1994):

> In any event, the analysis appropriate for a product's packaging, at issue in *Paddington*, is not necessarily appropriate for a product's configuration. Product packaging designs, like trademarks, often share membership in a practically inexhaustible set of distinct but approximately equivalent variations, and an exclusive right to a particular overall presentation generally does not substantially hinder competition in the packaged good, the item in which a consumer has a basic interest. A product configuration, contrariwise, commonly has finite competitive variations that, on the whole, are equally acceptable to consumers. . . . A proper approach to inherent distinctiveness must distinguish between nonfunctional but desirable designs—which, absent secondary meaning, unfair competition law has no interest in precluding others from copying—and nonfunctional designs representing to consumers the source of the goods—which unfair competition law does and should forbid others from copying.

-11-

predicated upon infringement of the trade dress of the product itself, the appeal requires us to confront a difficult area of trade dress law—that dealing with the circumstances under which product configurations, in contrast to product packaging…"). In *Duraco*, the product at issue was a plastic planter which itself might be desirable regardless of who made it. *Id.* at 1433. The planter does not act as a storage container–product packaging–for an ultimate product that the consumer wants to buy. However, the bottle at issue here is not the product. It is merely the vessel by which the product (wig melt spray) is delivered, and thus is the product *packaging.* *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000) ("a garish form of packaging (such as Tide's squat, brightly decorated plastic bottles for its liquid laundry detergent) may attract an otherwise indifferent consumer's attention on a crowded store shelf—their predominant function remains source identification").

In contrast to a decorative planter, no customer is purchasing EBIN's products because the bottle itself looks pretty or functions better like a shape of a plastic planter might. The customer is not purchasing EBIN's product because the package itself is desirable, as it does just as good of a job spraying its contents on the hair of a customer as Kiss's other designs. Instead, customers are purchasing EBIN's product because its contents are superior to those of its competitors, and customers use the color and opacity of the bottle, nozzle, and cap to differentiate EBIN's products from

those of its competition. (Complaint at ¶ 22) EBIN's spray bottle is the exact same as the "garish" Tide bottle, a form of product packaging for liquids, whose "predominant function remains source identification." *Wal-Mart Stores, Inc.*, 529 U.S. at 212.

The cases that Kiss cites in support of its argument that EBIN's "conclusory allegations are insufficient to plausibly plead inherent distinctiveness" are again inapplicable. Following the above pattern of citing cases out of context, out of circuit, are substantively different, or that were decided at a different stage of the case, the Plaintiff in *Hampden Eng'g Corp. v. Shear Tech, LLC* (decided on a motion for preliminary injunction) did not actually identify what its trade dress was by listing specific elements. Instead, it simply claimed that its trade dress was the whole product, so it was impossible for the court to know whether the trade dress was inherently distinctive, as the plaintiff did not identify what the trade dress was: "Plaintiff's Amended Complaint reiterates the elements of a trade dress claim by generally stating that the Hampden Products 'are inherently distinctive or have acquired secondary meaning in the marketplace.' The Amended Complaint fails, however, to identify any aspects of the design of the Hampden Products that are distinctive and thus subject to trade dress protection. " *Hampden Eng'g Corp. v. Shear Tech., LLC*, Civil Action No. 15-7424, 2016 WL 8677215, at *5 (D.N.J. Aug. 26, 2016)(internal citation omitted). The plaintiff in *Hampden Eng'g* just

pointed to its product and said, "all of it."  That was not sufficient to state a claim. In contrast, EBIN's recitation of elements of its product packaging was clear, and it specifically claimed that this combination was inherently distinctive. (Complaint at ¶¶ 20-22)[5]

### D.   **EBIN Properly Plead That its Trade Dress Has Secondary Meaning**

Even if EBIN's Trade Dress is not inherently distinctive (it is inherently distinctive), EBIN properly plead that its trade dress has secondary meaning. There are a number of factors that a Court can consider when determining if a mark has acquired secondary meaning, including: (1) the extent of sales and advertising leading to buyer association, (2) length of use, (3) exclusivity of use, (4) the fact of copying, (5) customer surveys, (6) customer testimony, (7) the use of the mark in trade journals, (8) the size of the company, (9) the number of sales, (10) the number of customers, and (11) actual confusion. *Ford Motor Co. v. Summit Motor Prods.*, Inc., 930 F.2d 277, 292 (3d Cir. 1991).  "'At the motion to dismiss stage, th[e] Court need not conclusively determine that the [marks] have acquired secondary meaning[,]' or find facts pertaining to every factor." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F.Supp.3d 380, 409 (E.D. Pa. 2020) (alterations

---

[5] *Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, No. 19-cv-1700 (DMG), 2020 WL 7380148, *14 (C.D. Cal. Sept. 22, 2020) is out of circuit.

in original) (citing *Lorillard Techs., Inc. v. NJ Ale House, LLC*, No. 14-2044, 2015 WL 1197531, at *7 (D.N.J. Mar. 13, 2015).

Here, EBIN has plead that its identified trade dress acquired secondary meaning through significant sales. (Complaint ¶¶ 22-23). It also plead that there are a number of instances of actual confusion. (Complaint ¶ 38). It also plead that it was an exclusive user of its trade dress for this relevant product line (Complaint ¶ 22), and that there is evidence of copying (Complaint ¶ 35).

"At the motion to dismiss stage, this Court need not conclusively determine that the [] Marks has acquired secondary meaning. Rather, it is sufficient that [plaintiffs] have pled facts pertaining to the factors enumerated above." *Lorillard Techs.,* 2015 WL 1197531, at *7.

### 1. <u>EBIN Properly Plead Significant Sales Gave Rise to Secondary Meaning</u>

Even if it is assumed for the sake of argument only that EBIN's trade dress is not inherently distinctive due to limitations on the inherent distinctiveness color (EBIN does not merely claim color as its trade dress, instead it claims the combination of color and design of the packaging (bottle) which can be inherently distinctive[6]), EBIN has plausibly plead that EBIN's product packaging has gained

---

[6] *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F.Supp.2d 60, 71 (S.D.N.Y. 2003) ("[A]lthough each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the

secondary meaning through its extensive sales. (Complaint at ¶¶ 22-23, 27) EBIN plead that it sold 2 million units of the particular trade dress in question (not other colors) in less than 2 years, and that such sales are a "resounding commercial success." (Complaint at ¶ 23) EBIN also plead that it averages monthly sales of 100,000 units a month. (Complaint at ¶ 24) This should be enough to show secondary meaning at the pleading stage.

All of the cases that Kiss cites for the proposition that sales figures without context at the pleading stage are insufficient to survive a motion to dismiss are out of circuit cases from the Tenth and Second Circuits. And there is a reason for Kiss's repeated citation to these circuits and not the Third Circuit. The Second Circuit, in particular, has a much more stringent standard than the Third Circuit for secondary meaning arising from sales. A court in this circuit has noted these strict requirements and expressly stated that a case that Kiss relies on, *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F.Supp.3d 317, 344 (E.D.N.Y. 2014), does not apply in this jurisdiction: "Although courts in the Second Circuit apply stringent standards for alleging these claims, courts in this Circuit are more flexible as to claimants. No court within this Circuit has relied on or followed in whole or in part Carson Optical to screen for secondary meaning." *I.M. Wilson,* 500 F.Supp.3d at 410.

---

distinctiveness inquiry. Thus, if the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic [or functional] elements.")

In contrast to the strict Second Circuit, courts in this Circuit have held that similar allegations were sufficient to give rise to an inference of secondary meaning at the pleadings stage: *First Am. Mktg. Corp. v. Canella*, No. CIV.A. 03-CV-812, 2004 WL 250537, at *4 (E.D. Pa. Jan. 26, 2004) ("It also states the extent of sales and advertising leading to buyer association indicating that 'FAMC had made and continues to make substantial efforts and expenditures to promote SIS's products and services under its trade name. It generates over a million pieces of mail each year under the SIS name.' (Id. ¶ 19.) Finally, the Amended Complaint states that it has over 5,000 senior clients. (Id. ¶ 20.)"); *AFL Phila. LLC v. Krause*, 639 F.Supp.2d 512, 527 (E.D. Pa. 2009) (finding secondary meaning, and denying a motion to dismiss in part on the basis of the counterclaimant pleading "record breaking ticket sales due directly to his efforts (Countercl. ¶ 11)").

Realizing that 2 million units of sales in less than two years is significant evidence of secondary meaning, Kiss argues that "[s]ales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designation capacity of the supposedly distinguishing feature or combinations of features," citing to *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1452 (3d Cir. 1994) (decided on a motion for preliminary injunction) and related cases. (Mot. at 18). But

the argument is irrelevant here as this is not a product configuration case, which those cases were. As explained above, EBIN's spray bottle, the product at issue here, is the exact same as the "garish" Tide bottle, a form of product packaging for liquids (or aerosols), whose "predominant function remains source identification." *Wal-Mart Stores, Inc.*, 529 U.S. at 212.

### 2.   EBIN Properly Plead That the Duration of Use Supports Secondary Meaning

As for the duration of use factor, the two in-circuit cases that Kiss cites, *Good 'N Nat. v. Nature's Bounty, Inc.*, No. 87-662, 1990 WL 127126, at *11 (D.N.J. Aug. 30, 1990), and *Diamond State Door, LLC, v. Diamond State Pole Bldgs.*, LLC, Civil Action No. 21-cv-1258-RGA, 2023 WL 3625000, at *5 (D. Del. March 24, 2023) for the proposition that two years of exclusive use is too short to have any meaning are both distinguishable for two reasons. First, both were decided on summary judgment. Thus, the plaintiffs had made it past the pleading stage based in part on what the court later found to be short durations of use. Second, both cases involved highly descriptive marks. *See Good 'N Nat.*, 1990 WL 127126, at *11 ("Evaluated in light of the highly descriptive ("natural" vitamins) nature of the mark and the nondescript trade dress in which the mark is incorporated, six years' exclusive use is not by itself significantly probative of secondary meaning."). *Diamond State Door, LLC*, 2023 WL 3625000, at *9 ("Plaintiff's mark of 'Diamond State Door' is not a

valid or protectable mark because it is a geographically descriptive mark that lacks secondary meaning.") The present case is neither at the summary judgment stage, nor is EBIN's claimed trade dress highly descriptive.

There is no reason that in the modern era, two years of use is not sufficient to weigh in favor of a finding of secondary meaning. As McCarthy notes:

> The days when a person learned the language and symbols of his society and made use of them, with little change, throughout his lifetime are long gone. Like any other word or symbol, trademarks will come and go with increasing frequency. The language of older precedent, which spoke of acquiring secondary meaning in terms of years, must be translated into the days and weeks that may be sufficient in a society that picks up new words and symbols in an amazingly short period of time. And the Internet has made it easier than ever to reach millions of people around the globe in a matter of seconds. Thus, the time required for the acquisition of secondary meaning is purely a matter of proof, not of artificial guidelines.

2 McCarthy on Trademarks and Unfair Competition § 15:56 (5th ed.)

Here the parties are at the pleading stage, and the mark is not highly descriptive. This factor should favor a finding of secondary meaning, particularly in view of modern trends of rapid acquisition and knowledge of new product lines.

3. **EBIN Properly Plead That the Instances of Actual Confusion of Use Supports Secondary Meaning**

One of the secondary meaning factors that Kiss skips is the already existing evidence of actual confusion. As is shown and plead in paragraphs 37-38, stores that are often run by immigrants whose English reading/writing/comprehension skills are

not as good as a native speaker are becoming confused and commingling Kiss's product that features the infringing trade dress with EBIN's products that feature EBIN's trade dress. In some instances, they are simply jumbled together in the same bin intended for EBIN's products (See page 27 below). In other instances, they are side by side on the store shelves with Kiss's products that do not feature the infringing product appearing off to the side with the other Kiss products. This clearly demonstrates that the products are not arranged according to manufacturer or brand, but by the color and overall look of the bottle. This is sufficient to establish actual confusion, particularly at the pleading stage. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 366 (3d Cir. 2007) (citation omitted) ("However, it takes very little evidence to establish the existence of the actual confusion factor.").



**KISS Products with Infringing Packaging Stocked Among EBIN Products of the Same Packaging with**

**Additional KISS Not Commingled Paragraph 38 of the Complaint**

The above, which shows KISS products with the non-infringing packaging being segregated to the left of the photo, while KISS products with the infringing packaging appear in the middle of a field of EBIN products directly next to the products that feature EBIN's Trade Dress in the center/right of the photo (and in front of an EBIN sign) is *strong* evidence of actual confusion and shows that the store owner uses overall look/color of the package to arrange the shelf, demonstrating secondary meaning in this unique packaging.   See, 2 McCarthy on Trademarks and Unfair Competition § 15:11 (5th ed.) ("If there is reliable evidence of actual customer confusion, then it follows logically that there must also be some

secondary meaning in the senior user's designation. If people were not aware of the trademark significance of the senior mark, how could they be confused as to source or affiliation? Thus, evidence of actual confusion is also evidence of secondary meaning and trademark significance.")

### 4. **EBIN Properly Plead That Defendant's Copying Supports Secondary Meaning**

EBIN also plead that there was copying of its trade dress. (Complaint ¶ 35) *Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F.Supp.2d 555, 602 (W.D. Pa. 2013) ("Plaintiffs' evidence of defendants' copying the Daily's frozen cocktail products' packaging weighs somewhat in favor of a finding of secondary meaning.").

EBIN plausibly plead a number of elements of secondary meaning including inherent/acquired distinctiveness, sales, actual confusion, duration of use, and copying. This is more than sufficient at the pleading stage where the well plead allegations are taken to be true.

### E. **The Complaint Plausibly States a Claim for Likelihood of Confusion**

Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In this Circuit, these factors include, but are not limited to:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of

-22-

the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005)

(quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)). The Third

Circuit has "repeatedly insisted that the foregoing *Lapp* factors are not to be

mechanically tallied, but rather that they are tools to guide a qualitative decision." *A*

*& H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir.

2000).

As Kiss itself admits, the likelihood of consumer confusion is typically a fact-

intensive analysis that is inappropriate for disposition on a motion to dismiss

(Motion at 21). It is right. This case is similar to *Milwaukee Elec. Tool Corp. v. Snow*

*Joe, LLC*, Civil Action No. 21-16140 (MAS) (DEA), 2022 WL 1192793, at *2

(D.N.J. April 21, 2022) wherein, like Kiss, when analyzing likelihood of confusion

at the motion to dismiss stage, the Defendant, Snow Joe, asked the court to conduct

a rigorous examination of the various *Lapp* factors:

With these factors in mind, Snow Joe urges the Court to undertake a rigorous analysis of the *Lapp* factors to determine that no likelihood of confusion exists. It argues, for example, that the appearance, sound, and meaning of the two marks are materially different. (Def.'s Moving Br. 15-24, ECF No. 12-12.) It argues that ONE+ is a weak mark that lacks distinctiveness. (*Id*. at 24-26 (listing cases).) It also argues that Plaintiffs lack any evidence of actual confusion—a striking fact given that the parties' products have competed with each other for at least two years. (*See id*. at 28-29.)

*Id.*

The Court noted that Defendant's arguments were good ones, but they were

proper for summary judgment, not the pleadings stage:

These arguments are well-taken. The problem for Snow Joe, however, is that they are better made at summary judgment. Snow Joe ignores that the "question of likelihood of confusion is ultimately one of fact." *A&H Sportswear, Inc.*, 237 F.3d at 237. That means these claims are ill-suited for resolution at the motion-to-dismiss stage. That's especially so because, as the Third Circuit has reasoned, "[l]ikelihood of confusion is a fact [question] normally reviewable under the clearly erroneous standard"—not a de novo standard reserved for questions decided as a matter of law. *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1063 (3d Cir. 1991) (alterations in original) (quoting *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 194-95 (3d Cir. 1990)). That the Third Circuit reviews the Court's likelihood-of-confusion analysis for factual *findings* rather than legal *determinations* furnishes strong evidence that this matter is better resolved at a later stage. Indeed, numerous courts have stated exactly that. *E.g., Interlink Prod. Int'l, Inc. v. F&W Trading LLC*, No. 15-1340, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016) ("[G]enerally speaking likelihood of confusion is a question of fact ... [and] the plaintiff is not required to prove the likelihood of confusion at the pleading stage." (second and third alterations in original) (citation omitted)); *Lorillard Techs., Inc. v. NJ Ale House, LLC*, No. 14-2044, 2015 WL 1197531, at *9 (D.N.J. Mar. 13, 2015) ("Whether, in fact, there is a likelihood of confusion ... is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage.").

-24-

(Emphasis added). *Id.*

    1.    **<u>EBIN Adequately Plead That The Infringing Trade Dress Is</u>**
          **<u>Confusingly Similar</u>**

Kiss spends a significant amount of time on the similarity of the marks factor, painstakingly dissecting the parties' products. Every color. Every word. Every label. (Motion at 21-24) This is inappropriate. As the Third Circuit explains, District Courts should focus on the overall impression that the marks create, rather than undertaking "a detailed analysis of the differences in the marks." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 478 (3d Cir. 1994). Kiss's arguments also ignore how the products appear in the marketplace, and what was actually plead. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004) ("The proper test is not side-by-side comparison but whether the [trade dresses] create the same overall impression when viewed separately.") (internal quotation marks omitted). Kiss even goes so far as to argue that the marks are so plainly dissimilar that the court can find as a matter of law at the pleading stage that there is no likelihood of confusion.  (Motion at 21-25) But "Defendants' burden of showing that confusion is unlikely as a matter of law is a heavy one" that Kiss simply has not satisfied. *Qwest Commc'ns Int'l v. Cyber-Quest, Inc.*, 124 F.Supp.2d 297, 304 (M.D. Pa. 2000)

Again, the cases that Kiss cites, particularly for the contention that the presence of a house mark dispels confusion, are inapplicable. Each was at a different phase of the case; be it after a motion for preliminary injunction in *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 584 (D.N.J. 1985) and on appeal from summary judgment in *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 475-476 (3d Cir. 2005)[7]

As was shown in the Complaint, particularly in the image found in Paragraph 38, when viewed as a whole from a distance, among the sea of other brightly colored products, these differences that Kiss identifies become far less significant. (Complaint at 38) In addition there are instances where the products are not viewed side-by-side. Instead, they are thrown into a bin together commingled and intermixed, tilted, rotated, and laying on its side. In such a situation, the existence of a house mark or different text becomes far less significant.

---

[7] *Freedom Card* also notes that use of a house mark can actually *increase* the potential for confusion in certain instances: "However, UTN correctly argues that the junior user's housemark can aggravate reverse confusion by reinforcing the association of the trademark exclusively with the junior user to the detriment of the smaller senior user." *Id.*



**KISS's Infringing Packaging Mixed with EBIN's Trade Dress and Other EBIN Products**

When it comes to melt lace sprays which both EBIN's and Kiss's products are, shiny black bottles with clear caps and black spray nozzles were the exclusive domain of EBIN until Kiss came along and decided to freeride on EBIN's popularity.

### 2. EBIN Adequately Plead That its Marks are Strong

As is explained in section C above, EBIN has adequately plead that its trade dress was strong. It is both inherently strong, and due to a number of factors such as significant commercial sales, has acquired secondary meaning.

### 3. EBIN Adequately Plead Overlap in Markets, Target Customers, Overlapping Products

Kiss's only defense to a number of the *Lapp* factors, namely, overlap in

markets, customers, and products, is that EBIN plead them using the magic words "on information and belief" instead of pleading them as facts. (Motion at 26-28) This is utter nonsense. Had EBIN plead these *Lapp* factors without the magic words, Kiss would have then accused EBIN of making conclusory statements. EBIN is damned if it did, damned if it didn't. There is no formal requirement of what magic words need to be used in notice-based pleading, and using "on information and belief" does not make the statements they contain not a fact. *Liberty & Prosperity 1776, Inc. v. Corzine*, 720 F.Supp.2d 622, 627 n.1 (D.N.J. 2010) (noting that the requirement that a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief'" was "a deliberate change from the old code pleading standards which resulted in technical dismissals for failure to write the magic words." (quoting Fed.R.Civ.P. 8(a)(2)); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 126 F.Supp.2d 937, 938 (E.D. Pa. 2001) (noting that "the Federal Rules of Civil Procedure operate under a notice pleading system, and 'magic words' are rarely, if ever, required to state a claim.").

EBIN included pictures in its complaint (a.k.a. facts) that show that its allegations regarding overlapping markets, overlapping target customers, and overlapping products are all substantiated factual pleadings. The parties' products are sitting next to each other on the same shelves and in the same bins. Clearly, they are in the same product category offered in the same marketing channels, and

targeted to the same customers. EBIN does not and cannot deny any of this, instead relying on the nonsense proposition that because they were pled on "information and belief" they are not facts. What is "information" if not a fact? Notice based pleading does not require this level of formalism. *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016)

### 4.    **EBIN Sufficiently Plead Actual Confusion**

Again, EBIN not only plead that actual confusion exists in the marketplace but showed pictures of it happening. See section C(3) above. Again, the fact that it used the magic words "on information and belief" is irrelevant particularly given the fact that it *showed* the actual confusion. It is absolutely plausible that when a store owner puts the bottle featuring Kiss's infringing packaging right next to EBIN's product featuring EBIN's trade dress in the EBIN section of the store, and many products over from the related line of KISS products, that owner is confused. So too when a store owner dumps all of the black colored wig melt products together in the same tub. These photographs are facts that demonstrate instances of actual confusion. In contrast, the in-circuit case that Kiss cites is far different. The plaintiff in that case merely pled some variation of "on information and belief, instances of actual confusion exist" and did not provide actual pictures of the confusion. *Johnson v. Park Ave. Rest. Corp.*, Civ. No. 17-7452 (WHW-CLW), 2018 WL 1535267, at *4 (D.N.J. Mar. 28, 2018) ("Upon information and belief, Defendant's misappropriation

has caused actual confusion among consumers as to Plaintiffs' affiliation with, endorsement of, and participation in Defendant's strip club business.")[8] The same is true even for the out-of-circuit cases cited. *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-1272 (DRH)(SIL), 2018 WL 1796228, at *9 (E.D.N.Y. Jan. 11, 2018) ("upon information and belief, there have been occurrences of actual confusion as to the source and sponsorship between the [Bernie Mev Shoes] and Defendants' infringement [sic] shoes.")

And evidence of actual confusion is strong evidence of a likelihood of confusion. *Reed Publ'g (Nederland) B.V. v. Execulink, Inc.*, No. CIV.A. 98-1049 AMW, 2000 WL 1023356, at *3 (D.N.J. June 8, 2000) ("Plaintiffs submit evidence of instances of actual confusion on the part of consumers, strong indicators in favor of a finding of a likelihood of confusion.") 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 23:13 (4th ed. 1998) ("Any evidence of actual confusion is strong proof of the fact of a likelihood of confusion.")

While this is merely the pleading stage, EBIN's well plead allegations of actual confusion support not only secondary meaning in its trade dress, but a strong

---

[8] Even if there are potentially other reasons why a store owner would have arranged its products like it did, at the pleading stage EBIN's claim that it did so because of actual confusion is certainly *plausible* and therefor must be taken as true. *Javo Beverage Co., Inc. v Javy Coffee Co.*, C. A. 22-547-RGA, 2023 WL 387587 at *2 (D. Del. Jan. 25, 2023) ("[T]he existence of consumer confusion is a fact-intensive analysis that does not lend itself to a motion to dismiss." (citation omitted)).

likelihood of confusion.

### 5. EBIN Sufficiently Plead Lack of Consumer Care

EBIN plead that the products at issue in this case cost around $10. (See Complaint at ¶¶ 45, 63, 92, 121 & 150). While EBIN did not add photos of price tags to its pleadings, it certainly has information about their prices, and Kiss does not dispute the low cost of its products.

As for the level of care, the products at issue cost somewhere around $10. This is a price point that courts in this district have found to be "inexpensive" resulting in a low degree of consumer care. *Juul Labs, Inc. v. 4X PODS.*, 439 F.Supp.3d 341, 354 (D.N.J. 2020) ("As to the third factor (purchasers' care and sophistication), I find that this factor points in favor of Juul. The price of a four-pod package is approximately $15. (DE 30-9 at 10). Though a consumable item, it is not a pack of gum; neither, however, is it a refrigerator or an automobile. The relatively inexpensive price tag for the pods tends to support an increased likelihood of consumer confusion."). A court can use its common sense to know this is inexpensive. *Peter Luger Inc. v. Silver Star Meats Inc.*, No. CIV.A.01-1557, 2002 WL 1870066, at *11 (W.D. Pa. May 17, 2002) ("[T]his court can rely on common sense and real life experience to conclude that the average customer is harried and not likely to exercise a high degree of care in purchasing an eighty-nine cent package of tortillas that are situated side by side").

-31-

Kiss cites only to cases in the Ninth Circuit for the proposition that purchasers exert a higher degree of care when purchasing hair care products. Not only are these out of circuit cases, and decided at a different stage of the case, but Kiss engages in its usual tricks of partially quoting cases out of context. In *Sexy Hair Concepts, LLC v. Conair Corp.*, Case No. 2:12-cv-02218-CBM (PLAx), 2012 WL 12882365, at *7 (C.D. Cal. Nov. 15, 2012), the court found the consumer care factor neutral because "Here, the products at issue are indeed relatively inexpensive, **but are typically sold in salons where consumers are probably particular about exactly what products work well in their hair**." (emphasis added). Note the glaring omission of the fact that the products are sold in salons which tend to be expensive hair care facilities frequented by people who deeply care about their looks. In contrast, the parties' products are sold in ordinary bulk beauty supply stores, a much different channel of trade.

### 6.   EBIN Sufficiently Plead Intent

Kiss's position that "KISS is a well-established, tremendously successful innovator in the beauty products space; EBIN does not and cannot plausibly allege that KISS's intent in developing its product packaging was anything other than legitimate entry into a competitive marketplace" is without merit. (Motion at 26) Just because a company is large and successful it is not plausible that it intentionally copied trade dress.

This is the exact type of element that even Kiss avers at length should be pled on information and belief because it is within Kiss's exclusive knowledge. But as discussed above, EBIN did plead facts that demonstrate the plausible nature of the pleadings, including the fact that Kiss completely changed its trade dress, including moving away from his classically bright colors to changing the nozzle of the bottle to the exact same one as EBIN's. (Complaint at ¶¶ 31-33) The mimicry was so exact that even the hole where the product sprays from that is embedded in the nozzle is green. This is clear evidence of intent and makes EBIN's pleading plausible.

### 7. EBIN Provided Information Regarding the Length of Time the Parties' Products Co-Existed Without Confusion and the Relationship of the Products in the Minds of Consumers

Kiss breezes over these factors claiming that EBIN did not plead anything concerning them. (Motion at 26-27) This is false.

As for the length of time factor, EBIN notes that its products first began sales in September 2021. The photos demonstrating actual confusion between EBIN's products and Kiss's products were taken March, 2023. Kiss knows exactly when its products were first introduced into the market, and it has only been a few months. Thus, the confusion was immediate. As the Third Circuit has noted, a plaintiff is not required to plead each and every element of every claim with "precision." *Rose v. Bartle*, 871 F.2d 331, 356 (3d Cir. 1989). This is notice based pleading, a fact that Kiss continuously ignores.

-33-

As for an association of the products in the minds of the consumers, the photos show the products literally right next to each other or piled in the same bins as each other. EBIN also expressly pleaded that they are the exact same type of product; lace wig sprays. (Complaint at ¶ 44) Retail shops are one form of customers that the parties sell to. EBIN also plead a direct association in the minds of customers in "On information and belief, EBIN is suffering economic harm by a loss in sales from customers purchasing the products that KISS sells in the Infringing Packaging while believing them to be the product that EBIN offers in connection with EBIN's Trade Dress." (Complaint ¶ 47) The association in the minds of consumers is clear, the parties' products are substitute products for each other.

**F.    EBIN is Not Alleging Infringement of a Line of Products**

EBIN is alleging infringement of a specific product. A single specific product. The WONDER LACE spray depicted in the Complaint. This is the product that has sold 2 million units since its first release in September 2021. This is the product that sells 100,000 units a month. This is not a product line inquiry.

Continuing the pattern, Kiss omits relevant citations for the case law it cites. In *What a Smoke*, the Plaintiff's allegations concerned a product line including battery products, cigarette kits, batteries, chargers and numerous other products. *What A Smoke, LLC v. Duracell U.S. Operations, Inc.*, Civil Action No. 19-16657 (JMV)(JAD), 2020 WL 6375653, at *4 (D.N.J. Oct. 30, 2020) ("The SAC does not

-34-

explicitly state whether Plaintiff seeks trade dress protection for an individual product or for a product line. But Plaintiff's allegations seem to suggest trade dress for a product line rather than an individual product. Plaintiff's trade dress allegations concern battery products, cigarette kits, batteries, chargers, and What A Smoke's 'numerous other products.' SAC ¶¶ 29-32. Therefore, the Court will conduct a product line inquiry.")

In contrast, EBIN only ever discusses a single product: its black WONDER LACE BOND spray. The pictures it included in the complaint that include any of its other products were only to show that shop keepers were confused and relied on the color/style/opacity of Kiss's bottles to commingle Kiss's products with EBIN's. The comparisons of the products, the discussions of sales and secondary meaning have only ever been direct to the black spray bottle.

## V.   **EBIN'S NEW JERSEY CLAIMS ALSO STATE A CLAIM**

Kiss is correct that EBIN's New Jersey claims are based on the same multi-factor analysis as its federal claims. For the reasons stated above, it also states a claim under its various New Jersey causes of action.

## VI.   **CONCLUSION**

Kiss's motion relies mostly on highly distinguishable cases that are either out of circuit, or from a different point in the litigation. The majority of Kiss's argument centers around the fact that EBIN's pleadings were made on "information and belief"

somehow implying that they were conclusory and can be ignored by the court. But modern notice pleading is not so formulaic. These pleadings were facts, often substantiated by pictures. It would be a waste of judicial time and resources to make EBIN refile the complaint to remove "on information and belief" from a number of its pleadings to convert them from an allegedly hypothetical statement to a fact.

EBIN did its job under a notice pleading standard. KISS knows what EBIN's claims are and the parties should now get on with the substance of this litigation.

Dated:  July 24, 2023                      Respectfully submitted,

By____s/John K. Kim_____
John K. Kim (NJ Bar No. 059451994)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85255
Tel:  (602) 262-5311
Fax: (602) 262-5747
Email: jkim@lewisroca.com

Drew Wilson (NJ Bar No. 011202010)
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
655 N. Central Ave., Suite 2300
Glendale, CA 91203-1445
Tel.: (626) 795-9900
Fax:  (626) 577-8800
Email: dwilson@lewisroca.com

*Attorneys for Plaintiff*
*EBIN New York, Inc.*