Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EBIN NEW YORK, INC.,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**KISS NAIL PRODUCTS, INC. and YONG JIN CHANG,**<br><br>        **Defendants.** | Civil Action No. 23-2369 (ES) (JRA)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff EBIN New York, Inc. (hereinafter, "Plaintiff" or "EBIN") filed suit against Defendants KISS Nail Products, Inc. ("KISS") and Yong Jin Chang ("Chang") (together, "Defendants") bringing claims for (i) trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (ii) trade dress infringement under New Jersey common law and N.J.S.A. § 56:3-13.16(a); and (iii) unfair competition under New Jersey common law. (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 51–166). Before the Court is Defendants' motion to dismiss the Complaint. (D.E. No. 16 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED** and Plaintiff's Complaint is dismissed *without prejudice*.

**I.**  **BACKGROUND**

    **A.**  **Factual Allegations**

According to the Complaint, Plaintiff is a provider of hair and wig care products that offers its products in a variety of "unique and stylized packaging." (Compl. ¶¶ 15 & 17). Plaintiff alleges

1

that one of its most successful products is its "WONDER LACE BOND spray," which "is used to adhere lace front wigs to the scalp of those who wear the wigs to ensure that the wigs do not move during ordinary use." (*Id.* ¶¶ 18–19). According to the Complaint, one popular version of the WONDER LACE BOND spray is sold in "stylized packaging" consisting of a "unique combination of a spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle," which Plaintiff appears to define as its trade dress. (*Id.* ¶¶ 20–21). Images of different sizes of the WONDER LACE BOND spray are shown below:



(*Id.* ¶ 20). Plaintiff claims that its WONDER LACE BOND spray has achieved significant commercial success, averaging monthly sales of 100,000 units. (*Id.* ¶¶ 23–24). Further, Plaintiff claims that its alleged trade dress is not functional[1] because "it does not impact the cost or quality

---

[1] As will be discussed below, a nonfunctional feature is one that "is unrelated to the consumer demand . . . and serves merely to identify the source of the product or business." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 311 (3d Cir. 2014) (internal quotation marks and citation omitted). Conversely, a functional feature is "one that is essential to the use or purpose of the article, affects the cost or quality of the article, or one that, if kept from competitors, would put them at a significant non-reputation-related disadvantage." *Id.* at 310–11 (internal quotation marks omitted) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001)).

of EBIN's products, and EBIN's exclusive use of said packaging does not place its competitors at a significant non-reputational disadvantage." (*Id.* ¶ 21).

According to the Complaint, Defendant KISS is also a manufacturer of wig bond products and is "one of EBIN's primary competitors" in this market. (*Id.* ¶ 30). KISS allegedly produces a line of lace wig bond sprays under the "STYLE FIXER" mark, which were previously sold in cans with "bright glossy colors and a white spray nozzle." (*Id.* ¶ 31). Plaintiff claims that KISS recently added a new "Ultimate Hold" lace wig bond spray to its "STYLE FIXER" line of products, which is produced in a new spray bottle painted "in a glossy black paint, a clear cap, and a black spray nozzle" (the, allegedly, "Infringing Packaging"). (*Id.* ¶ 33). Plaintiff alleges that this packaging is confusingly similar to the packaging associated with its WONDER LACE BOND spray. (*Id.* ¶ 2). Side-by-side images of the Defendant's "Ultimate Hold" STYLE FIXER lace wig bond spray (left) and Plaintiff's WONDER LACE BOND spray (right) are depicted below.



KISS's Infringing Packaging (left) with EBIN's Trade Dress (Right)

3

(*Id.* ¶ 33).  Plaintiff alleges that KISS adopted this new allegedly Infringing Packaging "to freeride on the goodwill associated with EBIN's [t]rade [d]ress, and cause confusion and mistake among the relevant consumers who would purchase KISS's Ultimate Hold product believing it to be the product offered by EBIN."  (*Id.* ¶ 35).  Further, Plaintiff claims that the way in which the parties' products are encountered in the marketplace exacerbates consumer confusion.  (*Id.* ¶ 36).  For example, the Complaint alleges that KISS's new Ultimate Hold products are often mixed together in a bin with EBIN's products as depicted below.  (*Id.* ¶ 37).



KISS's Infringing Packaging Mixed with EBIN's Trade Dress and Other EBIN Products

(*Id.*).  According to Plaintiff, because shopkeepers and employees are looking at the shape and coloration of the bottle and its cap, a number of shopkeepers and employees have already demonstrated confusion among the products and "have stocked KISS products that feature the Infringing Packaging in the EBIN section of the store next to EBIN products instead of next to the

4

KISS products in the same product line." (*Id.* ¶ 38). Plaintiff alleges that KISS's allegedly Infringing Packaging is "likely to cause confusion as to the source, origin, sponsorship of KISS and the products that it sells on the one hand[,] and EBIN and the products that it sells in connection with EBIN's [t]rade [d]ress on the other." (*Id.* ¶ 65). Further, Plaintiff claims that Defendant Chang, who is the CEO of KISS, was aware of EBIN's trade dress and allegedly directed KISS to adopt, advertise, and sell products featuring the Infringing Packaging. (*Id.* ¶¶ 14 & 72–75).

### B. Procedural History

Plaintiff initiated this action on April 28, 2023, asserting claims for (i) trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) against KISS (Count I); (ii) induced trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) against Chang (Count II); (iii) trade dress infringement under N.J.S.A. § 56:3-13.16(a) against KISS (Count III); (iv) induced trade dress infringement under N.J.S.A. § 56:3-13.16(a) against Chang (Count IV); (v) trade dress infringement under New Jersey common law against KISS (Count V); (vi) induced trade dress infringement under New Jersey common law against Chang (Count VI); and (vii) unfair competition under New Jersey common law against KISS (Count VII) and Chang (Count VIII). (Compl. ¶¶ 51–166). On July 7, 2023, Defendants filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 16-1 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 20 ("Opp. Br."); D.E. No. 21 ("Reply")).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset*

5

*Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (internal quotation marks omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks omitted) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug.

6

26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III. DISCUSSION

### A. Trade Dress Infringement under 15 U.S.C. § 1125(a) (Count I)

In Count I, EBIN brings a claim against KISS under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for infringing EBIN's unregistered trade dress. (Compl. ¶¶ 51–69).

Section 43 of the Lanham Act creates a federal cause of action for trade dress infringement. 15 U.S.C. § 1125(a); *see also Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 496 (D.N.J. 2014). "Trade dress has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n. 1 (1992)). In other words, "trade dress is the overall look of a product or business." *Fair Wind*, 764 F.3d at 308. "The purpose of trade dress protection is to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (quoting *Shire U.S. Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)).

To state a claim for trade dress infringement, a complaint must set forth facts sufficient to support the inference that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil*, 511 F.3d at 357 (citing *Shire US Inc.*, 329 F.3d at 353). Additionally, the plaintiff must "articulat[e] the specific

7

elements which comprise its distinct dress." *Fair Wind*, 764 F.3d at 309 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

Here, Defendants move to dismiss Plaintiff's trade dress infringement claim under Count I because, among other things, (i) Plaintiff has failed to identify its alleged trade dress with requisite particularity and (ii) Plaintiff has failed to allege that its trade dress is nonfunctional. (Mov. Br. at 8–13). The Court considers each of these arguments in turn.

### i. Defining Trade Dress

As discussed, Defendants move to dismiss Plaintiff's trade dress infringement claim under Count I because Plaintiff has failed to identify its alleged trade dress with requisite particularity. (*Id.* at 8–10). More specifically, though Defendants acknowledge that Plaintiff's Complaint appears to allege that EBIN's trade dress consists of "[a] unique combination of a spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle" (*Id.* at 9 (citing Compl. ¶ 21)), Defendants point out that the Complaint then goes on to provide that a number of shopkeepers and employees have already found the packaging on KISS's Ultimate Hold products to be confusingly similar to EBIN's alleged trade dress because these "shopkeepers and employees are simply looking at the shape and coloration of the bottle and its cap." (*Id.* at 9–10 (citing Compl. ¶ 38)). As such, Defendants contend that it is facially unclear from Plaintiff's Complaint whether Plaintiff's trade dress "(i) extends to the configuration (shape) of the bottle(s), and if so, to which one, as EBIN's claimed products come in multiple sizes; (ii) extends to the configuration (shape) of the cap(s), or (iii) encompasses all types of "spray bottles" or just those identified in the photographs displayed in the Complaint." (Mov. Br. at 9). In Opposition, Plaintiff contends that it has adequately identified its trade dress because it provided a list of its trade dress elements, including the glossy black bottle, clear cap, and black spray nozzle, and provided representative

8

pictures of its trade dress. (Opp. Br. at 8–9). Plaintiff further provides that "[e]ven if EBIN's articulation of its trade dress was more detailed to include things like the rounded shape of the shoulders of the bottle, etc., it would not matter or change the fact that K[ISS] infringed EBIN's trade dress . . . . [i]t did not pick any bottle; it picked the same bottle with the same contours and same glossy black paint." (*Id.*). For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff has failed to adequately define its trade dress.

The Third Circuit has noted that before the Court reaches the question of whether trade dress is protectable, "a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection of visual elements of its business." *Fair Wind*, 764 F.3d at 309. This includes a "duty to articulat[e] the specific elements which comprise its distinct dress" to ensure that a plaintiff's trade dress allegations are not "pitched at an improper level of generality." *Id.* (internal quotation marks and citations omitted). To meet this duty, "[t]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list." *Id.* (quoting Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 2014)). "[M]erely includ[ing] images" of products is insufficient to "adequately 'articulate the specific elements which comprise [a] distinct dress.'" *Tristar Prods., Inc. v. E. Mishan & Sons, Inc.*, No. 17-1204, 2017 WL 1404315, at *7 (D.N.J. Apr. 19, 2017) (quoting *Fair Wind*, 764 F.3d at 309). Where a plaintiff fails to give a defendant "adequate notice of what overall look it wishes to protect, its trade dress claim cannot survive [a defendant's] motion to dismiss." *Fair Wind*, 764 F.3d at 310.

The Court finds that Plaintiff has failed to provide Defendants with adequate notice of the basis of Plaintiff's trade dress claim. Here, as discussed, the Complaint appears to allege that Plaintiff's trade dress consists of a "unique combination of a spray bottle painted in a glossy black

9

paint, a clear cap, and a black spray nozzle." (Compl. ¶ 21).  Yet, as Defendants point out (Mov. Br. at 9–10), the Complaint then goes on to provide that a number of shopkeepers and employees have already found the packaging on KISS's Ultimate Hold products to be confusingly similar to EBIN's alleged trade dress because these "shopkeepers and employees are simply looking at the *shape* and coloration of the bottle and its cap," suggesting that Plaintiff's trade dress also encompasses the *shape* of its spray bottle and cap.  (*Id.* ¶ 38 (emphasis added)).  However, Plaintiff's Complaint at no point alleges what aspects of the shape of its WONDER LACE BOND spray bottle and cap are encompassed in its alleged trade dress.  And a mere reference to a broad category such as "shape" is insufficient to put the Court and Defendants on adequate notice of what Plaintiff believes is its protectable trade dress.  *Conopco, Inc. v. WBM, LLC*, No. 21-14205, 2023 WL 2570207, at *4 (D.N.J. Mar. 20, 2023) (finding that defendant failed to articulate specific elements of its alleged trade dress where it only vaguely referred to its translucent packaging); *see also Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) ("The [c]omplaint fails to articulate the precise nature of the trade dress [p]laintiff purports to claim, and merely contains a high level description of features of several watches, such as 'gradient chain,' 'lobster claw closure,' and 'leaf-shaped logo,' without allegations as to whether and how those features are distinctive.").  Accordingly, as Defendants point out (Mov. Br. at 9–10), it is facially unclear from Plaintiff's Complaint whether its alleged trade dress extends only to its "spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle," (Compl. ¶ 21), or whether its trade dress also encompasses the "shape" associated with its WONDER LACE BOND spray bottle and cap (*id.* ¶ 38)—and, if so, what aspects of those shapes Plaintiff claims are protectable.  *See Fair Wind*, 764 F.3d at 309–10; *see also Sleep Sci. Partners v. Lieberman*, No. 09-4200, 2010 WL 1881770, at * 3 (N.D. Cal. May 10, 2010) (noting that the plaintiff's language

suggested that the listed components of trade dress were "only some among many, which raise[d] a question of whether it intend[ed] to redefine its trade dress at a future stage of litigation"). Because Plaintiff has failed to give Defendants "adequate notice" of what aspects of its WONDER LACE BOND spray trade dress it wishes to protect, its trade dress claim under Count I cannot survive Defendants' motion to dismiss. *Fair Wind*, 764 F.3d at 310; *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-7899, 2021 WL 1758881, at \*3 (S.D.N.Y. May 4, 2021) ("[I]f the court 'do[es] not know what distinctive combination of ingredients deserves protection,' it 'will be unable to evaluate how unique and unexpected the design elements are in the relevant market' and 'unable to shape narrowly-tailored relief.'" (internal citations omitted)).

Plaintiff's arguments in opposition are unavailing. As discussed, in its Opposition, Plaintiff contends that it has adequately identified its trade dress because it provided a list of its trade dress elements and provided representative pictures of its trade dress. (Opp. Br. at 8–9). However, again it is facially unclear from Plaintiff's Complaint whether its alleged trade dress extends only to its "spray bottle painted in a glossy black paint, a clear cap, and a black spray nozzle" (Compl. ¶ 21), or whether its trade dress also encompasses the "shape" associated with its WONDER LACE BOND spray bottle and cap (*id.* ¶ 38)—and, if so, what aspects of those shapes Plaintiff claims are protectable. And although Plaintiff's Complaint contains photographs of the WONDER LACE BOND spray, the Court cannot distill the distinctive elements of Plaintiff's alleged trade dress from a collection of photos. *See Liko AB v. Rise Lifts, Inc.*, No. 07-5302, 2008 WL 2977869, at \*6 (E.D. Pa. July 31, 2008) ("The mere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue."); *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 424 F. Supp. 3d 983, 991–92 (S.D. Cal. 2019), *aff'd sub nom. Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95 (9th Cir. 2020) (holding that attaching

product pictures as exhibits to a trade dress claim, while helpful, asks the court to take on plaintiff's role in identifying "what is to be protected").

Plaintiff further provides that "[e]ven if EBIN's articulation of its trade dress was more detailed to include things like the rounded shape of the shoulders of the bottle, etc., it would not matter or change the fact that K[ISS] infringed EBIN's trade dress . . . . [i]t did not pick any bottle; it picked the same bottle with the same contours and same glossy black paint." (Opp. Br. at 8–9). However, this suggests to the Court that Plaintiff's trade dress does in fact extend to the "shape" associated with its WONDER LACE BOND spray bottle and cap. (*See also id.* at 3 (explaining that KISS adopted a spray nozzle with the "*same shape*" as EBIN's spray nozzle (emphasis added)); *id.* at 15 ("EBIN does not merely claim color as its trade dress, instead it claims the combination of color *and design of the packaging* (bottle)" (emphasis added)); *id.* at 20 (explaining that there is actual confusion between KISS's and EBIN's products based on the "color and *overall look of the bottle*." (emphasis added)). And as described above, Plaintiff's Complaint at no point alleges what aspects of the shape of its WONDER LACE BOND spray bottle and cap are encompassed in its alleged trade dress. Though Plaintiff's opposition brief appears to claim as distinctive certain elements of the shape of its WONDER LACE BOND spray (Opp. Br. at 8–9), Plaintiff's Complaint cannot be amended (or supplemented) by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal citation omitted)).[2]

---

[2] In their Moving Brief, Defendants also contend that Plaintiff has failed to plausibly plead a "consistent overall look," which is necessary in making a trade dress infringement claim based on a product line as opposed to a specific product. (Mov. Br. at 28–29). Nevertheless, in opposition, Plaintiff clarifies that it is alleging infringement of a specific product—the "black WONDER LACE BOND spray"—rather than a series or line of products. (Opp. Br. at 34–35). As such, the Court does not consider Defendants' arguments and notes that the "consistent overall look" standard, which applies to a "series or line of products," is inapplicable here because Plaintiff is alleging trade dress infringement of a specific product. *Kee Action Sports LLC v. Valken Inc.*, No. 12-6069, 2013 WL 6633439, at *4–5

### ii. Functionality

Plaintiff has also failed to plead that its trade dress is nonfunctional. In their Moving Brief, Defendants contend that Plaintiff's Complaint is entirely devoid of any non-conclusory, well-pled, factual allegations that EBIN's alleged trade dress is nonfunctional. (Mov. Br. at 11–13). In Opposition, Plaintiff fails to respond to this argument or offer any explanation as to how the Complaint plausibly alleges that its purported trade dress is nonfunctional. (*See generally* Opp. Br.). For the reasons set forth below, the Court finds that Plaintiff's trade dress claim under Count I also cannot proceed because Plaintiff has failed to plead that its trade dress is nonfunctional.

As discussed above, to state a claim for trade dress infringement, a complaint must set forth facts sufficient to support the inference that, among other things, "the allegedly infringing design is non-functional." *McNeil*, 511 F.3d at 357. A nonfunctional feature is one that "is unrelated to the consumer demand . . . and serves merely to identify the source of the product or business." *Fair Wind*, 764 F.3d at 311 (internal quotation marks and citation omitted). Conversely, a functional feature is "one that is essential to the use or purpose of the article, affects the cost or quality of the article, or one that, if kept from competitors, would put them at a significant non-reputation-related disadvantage." *Id.* at 310 (internal quotation marks and citations omitted). Section 43(a)(3) of the Lanham Act provides, "[i]n a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). As such, there is a "statutory presumption that features are deemed

---

(D.N.J. Dec. 17, 2013) (explaining that the more stringent "recognizable and consistent overall look" standard adopted in *Rose Art Indus., Inc. v. Swanson*, 235 F. 3d 165, 172 (3d Cir. 2000) was not relevant because the plaintiff was seeking trade dress protection for a single product and not an entire line of products).

functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc.*, 532 U.S. at 29–30.

Here, as Defendants highlight (Mov. Br. at 11–13), Plaintiff's Complaint is entirely devoid of any non-conclusory, well-pled, factual allegations that EBIN's alleged trade dress is nonfunctional. To support the notion that its trade dress is nonfunctional, Plaintiff merely alleges in a conclusory fashion that its trade dress is "not functional" because "it does not impact the cost or quality of EBIN's products, and EBIN's exclusive use of said packaging does not place its competitors at a significant non-reputational disadvantage." (Compl. ¶ 21; *see also id.* ¶¶ 56, 85, 114 & 143 (alleging in a conclusory manner that "EBIN's Trade Dress is not functional.")). Such allegations, however, are nothing more than threadbare recitations of the applicable legal standard, and as such are insufficient to plead nonfunctionality. *See, e.g.*, *Interlink Prod. Int'l, Inc. v. HDS Trading Corp., Inc.*, No. 15-1642, 2015 WL 12840378, at *4 (D.N.J. Oct. 14, 2015) (dismissing claim for trade dress infringement where plaintiff offered only conclusory allegations that trade dress was nonfunctional); *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 21-3960, 2023 WL 6279197, at *7 (S.D.N.Y. Sept. 26, 2023) (finding that allegations that merely stated that elements of packaging were nonfunctional "because they [we]re not essential to the use or purpose of the product or packaging, and d[id] not affect the cost or quality of the pistachios or packaging" were threadbare recitations of the applicable legal standard insufficient to plead nonfunctionality); *Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co. Ltd.*, 839 F. App'x 95, 98 (9th Cir. 2020) (affirming dismissal for failure to plead nonfunctionality where the plaintiff pleaded only that the design features were "not essential to the function of the product, d[id] not make the product cheaper or easier to manufacture, and d[id] not affect the quality of the product").

Further, in its opposition brief, Plaintiff fails to contest Defendants' argument that it has failed to plead nonfunctionality and does not offer any explanation as to how the Complaint plausibly alleges that its purported trade dress is nonfunctional. (*See generally* Opp. Br.). "Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." *Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (citing *Conroy v. Leone*, 316 Fed. App'x. 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")). As such, by failing to oppose Defendants' arguments that the Complaint does not adequately allege nonfunctionality, Plaintiff has conceded this point.

In sum, the Court finds that Plaintiff's trade dress infringement claim under Count I cannot proceed because Plaintiff has failed to adequately define its trade dress and has also failed to plead that its trade dress is nonfunctional.[3]

### B. Induced Trade Dress Infringement under 15 U.S.C. § 1125(a) (Count II)

In Count II, EBIN brings a claim against Chang under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for inducing the infringement of EBIN's unregistered trade dress. (Compl. ¶¶ 70–79). More specifically, Plaintiff claims that Defendant Chang, who is the CEO of KISS, was aware of EBIN's trade dress and allegedly directed KISS to adopt, advertise, and sell products that infringed EBIN's trade dress, thereby inducing infringement of EBIN's unregistered trade dress. (*Id.* ¶¶ 14 & 72–75).

A corporate officer may be personally liable for trademark infringement under the Lanham Act under a theory of piercing the corporate veil or if the officer knowingly and significantly

---

[3] Because the Court finds that Plaintiff has failed to adequately define its trade dress and has also failed to plead that its trade dress is nonfunctional, it will not consider Defendants' remaining arguments in favor of dismissing Plaintiff's trade dress infringement claims. (*See* Mov. Br. at 13–28).

participates in another's act of trademark infringement and "authorize[s] and approve[s]" the infringing acts. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978).; *see also Elec. Lab'y Supply Co., Inc. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992); *Spark Innovators Corp. v. Tele Marketers, Inc.*, No. 14-1771, 2014 WL 2773661, at *7 (D.N.J. June 19, 2014); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 410–11 (E.D. Pa. 2020). Further, an individual may be liable for contributory infringement under the Lanham Act if the individual (i) "intentionally induces another to infringe a trademark," (ii) or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Mister Softee, Inc. v. Amanollahi*, No. 14-1687, 2014 WL 3110000, at *7 (D.N.J. July 1, 2014) ("The Third Circuit has recognized that the contributory infringement doctrine need not be confined to manufacturers and that 'other courts have expanded it beyond that particular origin.'" (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir. 1994)); *Katiroll Co. Inc. v. Kati Roll & Platters Inc.*, No. 10-3620, 2012 WL 3061152, at *4–5 (D.N.J. July 26, 2012). Contributory trademark infringement requires that direct infringement occurred. *See* 4 McCarthy on Trademarks and Unfair Competition § 25:17 (5th ed.); *Dish Network L.L.C. v. Siddiqi*, No. 18-4397, 2019 WL 5781945, at *3 (S.D.N.Y. Nov. 6, 2019) ("As a preliminary matter, . . . the [c]ourt first must find a direct infringing use of the . . . marks before it may consider whether [the] defendant is liable under either [a contributory or vicarious] theory of secondary liability.").

Here, the Court finds that, because Plaintiff's trade dress infringement claim cannot proceed against KISS, Plaintiff's claim for induced trade dress infringement against Chang under the Lanham Act also cannot proceed. *Atari Interactive, Inc. v. Printify, Inc.*, No. 23-8926, 2024 WL 476493, at *8 (S.D.N.Y. Jan. 25, 2024) (finding that where plaintiff did not demonstrate a

16

likelihood of success on its trademark infringement claim against the defendant corporation, it also could not show a likelihood of success in holding a corporate officer personally liable for trademark infringement); *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 725–26 (M.D. Pa. 2013) ("Because Plaintiff has failed to state a claim for trade dress infringement, his contributory liability claim based on student instructors' alleged use of his trade dress must fail as well."); *Carrell v. Origami Owl, LLC*, No. 18-0694, 2019 WL 1330941, at *6 (S.D.N.Y. Mar. 25, 2019).[4]

### C. State Law Claims (Counts III through VIII)

Plaintiff also brings claims for (i) trade dress infringement under N.J.S.A. § 56:3-13.16(a) against KISS (Count III); (ii) induced trade dress infringement under N.J.S.A. § 56:3-13.16(a) against Chang (Count IV) (iii) trade dress infringement under New Jersey common law against KISS (Count V); (iv) induced trade dress infringement under New Jersey common law against Chang (Count VI); and (v) unfair competition under New Jersey common law against KISS (Count VII) and Chang (Count VIII). (Compl. ¶¶ 80–166). As Defendants point out (Mov. Br. at 30), the elements for claims of trademark infringement and unfair competition under New Jersey statutory and common law are the same as the elements for a claim of trademark infringement under the Lanham Act. *J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for . . . claims of trademark infringement and unfair competition under New Jersey statutory and common law"); *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) ("Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under

---

[4] As such, the Court does not reach Defendants' remaining arguments in favor of dismissing claims against Chang. (*See* Mov. Br. at 5–8).

New Jersey statutory and common law, the Court's analysis below extends to Plaintiff's state law claims as well." (internal citations omitted)); *Solid 21, Inc. v. Movado Retail Grp., Inc.*, No. 19-8093, 2020 WL 13829042, at *2 (D.N.J. Jan. 8, 2020). And Plaintiff agrees that its state claims are based on the same elements as its federal Lanham Act claims. (Opp. Br. at 35). As such, these claims fail for the same reasons that the Lanham Act claims fail, as described above.

### D. Leave to Amend

Finally, because EBIN has failed to seek leave to amend or otherwise contravene the conclusion that amendment would be futile, Defendants request that the Court dismiss EBIN's Complaint with prejudice. (Reply at 1 & 9 n.5). The Court disagrees and finds that Plaintiff's Complaint should be dismissed *without prejudice*.

"While Plaintiff did not request leave to amend, even when a party does not seek leave, district courts should expressly state whether a party may replead." *Dialectic Distribution, LLC v. Power Play Mktg. Grp., LLC*, No. 18-3388, 2018 WL 6839571, at *5 (D.N.J. Dec. 31, 2018) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). The decision is within the Court's discretion. *Shane*, 213 F.3d at 115. Denial of leave to amend is warranted in cases of "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

None of the conditions warranting dismissal with prejudice are present here. There is no evidence of undue delay, bad faith, or dilatory motive. *See Shane*, 213 F.3d at 116. Further, Plaintiff has thus far not amended its Complaint and this Opinion is the first judicial scrutiny of its allegations. Regarding futility, the Court cannot rule out the possibility that Plaintiff could remedy

the deficiencies identified above by adequately defining its trade dress and pleading that its trade dress is nonfunctional. As such, the Court finds that a dismissal without prejudice is appropriate. *Dialectic Distribution*, 2018 WL 6839571, at *5

## IV. CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 16) is **GRANTED** and Plaintiff's Complaint is dismissed *without prejudice*. An appropriate Order follows.

Dated: March 28, 2024                                                                 *s/ Esther Salas*
                                                                                                    **Esther Salas, U.S.D.J.**